# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NORFOLK SOUTHERN RAILROAD COMPANY V. J. H. MABE.

### April 22, 1926.

1. MASTER AND SERVANT—*Federal Employers' Liability Act—Sixteen-Hour Law (U. S. Comp. St., Sections 8677-8680, 8 Fed. Stat. Ann. [2nd ed.] 1383)—Persons "Engaged in or Connected with the Movement of Any Train"—Violation Responsible in Whole or Part for Injury.—* Upon the question of whether or not a watchman on the yard of a railroad company, employed to do police duty during a strike, can be construed to come within the purview of the Federal employers' liability law (U. S. Comp. St., sections 8677-8680, 8 Fed. Stat. Ann. [2nd ed.] 1383), which in terms covers those persons "engaged in or connected with the movement of any train" there may very readily arise difference of opinion, but this question can only become an important one when the violation of the act is in some way responsible in whole or in part for the resultant injury.

2. RAILROADS—*Federal Employers' Liability Act—Sixteen-Hour Law (U. S. Comp. St., Sections 8677-8680)—Violation not Proximate Cause of Accident—Case at Bar.—*In the instant case plaintiff, a watchman employed by an interstate carrier, was accidentally shot with his own pistol. There was no evidence as to what caused the discharge of the pistol or how the accident occurred. The pistol was furnished plaintiff by his employer. Plaintiff had been on duty continuously for thirty-four hours before the accident. The natural conclusion from the evidence was that plaintiff, while carrying the pistol in his hand, either struck it against some hard object or allowed it to fall from his hand causing it to be discharged. It appeared that the weapon itself and the appliances for carrying it were reasonably safe.

   *Held:* That there was no causal connection between the violation of the sixteen-hour law (U. S. Comp. sections 8677-8680) and the pistol being taken from its perfectly safe container and in some unknown way exploded.

3. APPEAL AND ERROR—*New Trial—Error in Instructions—Where no Other Verdict could have been Returned.—*Whether there were errors in the instructions or not, where no other verdict could possibly have been rendered than that returned by the jury, the trial court should enter judgment on the verdict and it is error to set it aside.

4. APPEAL AND ERROR—*Two Trials—Verdict Set Aside in the First Trial.*—
Where the trial court improperly set aside the verdict of the jury
on the first trial of a case, it is unnecessary for the appellate court
to consider or pass upon the rulings of the trial court in the second
trial.

Error to a judgment of the Law and Chancery
Court of the city of Norfolk, in an action of trespass
on the case. Judgment for plaintiff. Defendant as-
signs error.

*Reversed.*

The opinion states the case.

*Jas. G. Martin & Bro.*, for the plaintiff in error.

*Rixey & Rixey*, for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

This is an action of trespass on the case brought
by J. H. Mabe, the defendant in error, who will be
hereafter designated as plaintiff against Norfolk South-
ern Railroad Company, in the first trial of which in
July, 1924, a jury returned a verdict in favor of the
defendant, which was set aside by the court, and at
the second trial on October 29, 1924, a verdict for the
plaintiff was approved by the trial court, to both of
which proceedings the defendant excepted, and the
case is before us to determine, first, whether or not
the court was justified in setting aside the verdict
of the jury on the first trial of the case, and ordering
a new trial? If the court was correct in its ruling,
then it will become necessary to consider the excep-
tions taken by the defendant during the progress of
the second trial, and to the court's refusal to set aside
the verdict of the jury as returned at that time.

During the shopman's strike in 1922, plaintiff applied for and was employed as a watchman or guard in the yard of defendant company located in Berkley ward in the city of Norfolk. As such guard he was furnished a pistol by the defendant which he kept and used for some weeks, but returned same after thus using it, because it was not considered by him as a reliable weapon. The chief special agent of defendant company then procured for his use a 38 calibre Smith & Wesson revolver, and furnished him a cartridge belt, the plaintiff himself purchasing the holster which was so slit by the special agent in his presence as to permit the belt to be passed through the slits in the holster in which the pistol was to be carried, and thus with the belt around his waist he carried the pistol in the holster on his right side or hip. The bottom, or barrel end of the holster, was cut off so as to allow the muzzle of the pistol to extend beyond the bottom of the holster some three or four inches.

On the morning of August 14, 1922, at about 4:30 the plaintiff while on duty in the yard of defendant where he had been on duty continuously for about thirty-four hours, was shot in the arm by the explosion of his own revolver, which had in some unexplained way gotten out of the holster, and apparently fallen and struck against some hard surface causing the same to be discharged. The ball entered the forearm of defendant in error, traveling an upward course and lodging on the opposite side of the arm from the point of entry.

The errors assigned by defendant are as follows:

"1. The trial court erred in setting aside the first verdict, which verdict was in favor of defendant.

"2. The trial court erred on the second trial in

granting each of the instructions asked by the plaintiff and in granting an instruction of its own motion, this assignment of error being as to each of these instructions (R. 242, bill of exceptions No. 3).

"3. The trial court erred in refusing the instructions which were asked by defendant on the second trial and refused, this assignment being as to each of these instructions (R. 245, bill of exceptions No. 4).

"4. The trial court erred in refusing to set aside the second verdict as contrary to the law and the evidence, and without evidence to support it."

The first assignment deals entirely with the alleged error of the court in setting aside the jury's verdict on the first trial, and if this position is well taken, a consideration of the other assignments would be unnecessary.

We gather from the brief of counsel for the plaintiff that the verdict of the jury in the first trial was set aside because of an error in granting instruction No. 4 at the instance of defendant. That instruction reads:

"4. The court instructs the jury that if they believe from the evidence that the pistol was reasonably safe if handled with reasonable care, they should find for the defendant."

The criticism offered against this instruction being that it ignored the sixteen hour employers liability law (U. S. Comp. St., sections 8677-8680) applicable to employees "engaged in or connected with the movement of trains, etc."; that he was such an employee, and, therefore, the instruction was erroneous.

[1] As to whether or not a watchman on the yard of a railroad company employed to do police duty during a strike can be construed to come within the purview of the statute, which in terms covers those

persons "engaged in or connected with the movement of any train" there may very readily arise differences of opinion. We think this question can only become an important one, when its violation is in some way responsible in whole or in part for the resultant injury.

The pistol which was manufactured by Smith & Wesson was in perfect condition, and is recognized as one of the best makes in use, but if the hammer is struck with sufficient intensity an explosion may be produced, as the pistol is held off of the cartridge by a spring which will yield if sufficient pressure is applied.

On the night of the accident plaintiff was carrying the pistol in a holster or case with the end of the barrel protruding through the lower end of the holster about two or three inches, and this was suspended upon a belt that buckled around the waist, the pistol resting in the holster about the right hip. The pistol and belt had been supplied by the defendant company and the holster was purchased and owned by the plaintiff, who was familiar with fire arms, having recently left the regular army in which he had served for five years.

No one saw the accident which occurred at 4:30 a. m.—not even the plaintiff himself, strange as this may seem. We quote his testimony:

"Q. Now, you had been on duty at the time you were hurt, I think you said, since Saturday afternoon at six o'clock?

"A. Yes, sir.

"Q. What was your condition at that time?

"A. I was drowsy and sleepy.

"Q. You were drowsy and sleepy?

"A. Yes.

"Q. Did that have anything to do with the pistol falling out of your holster?

"A. It may have had something to do with it.

"Q. What?

"A. I suppose it had something to do with it.

"Mr. Martin: I object to his opinion, may it please the court.

"Mr. Rixey: I will withdraw that.

"The court: Strike it out.

"By Mr. Rixey:

"Q. During the time that you were on duty thirty-four and a half hours, did you get any sleep?

"A. No, sir.

"Q. Now, tell the jury just what you remember there at the actual injury.

"A. Well, I know when I was on the ground.

"Q. What is the first thing you knew when you had been shot?

"A. I felt numb and my arm was swinging around and blood flying.

"Q. Did you hear the report of the pistol?

"A. No, sir.

"Q. You say you found yourself on the ground?

"A. Yes, sir.

"Q. What did you do then?

"A. I scrambled up and got off the ground and took my pistol in the left hand.

"Q. Where was the pistol?

"A. Laying on the ground.

"Q. Your pistol was laying on the ground?

"A. Right next to the railroad.

"Q. Which arm was shot?

"A. The right arm.

"Q. Was there a hole in your coat?

"A. No, sir."

[2] The pistol belt and holster were exhibited before the court and practical tests made in its presence.

After a careful reading of the evidence, and consideration of the same in connection with the exhibits before us, we are wholly without evidence as to what caused the discharge of the pistol, or how the accident occurred. The great weight of the evidence supports the conclusion that the weapon did not fall out of the holster, and that it was not fired while resting therein. The plaintiff has been unable to point out in what manner the pistol was fired, and, therefore, this court is unable to say that defendant's negligence was either the proximate or contributing cause of the injury.

The irresistible conclusion is that plaintiff while carrying it in his hand either struck it against some hard object causing the explosion, or while thus being carried he allowed it to fall from his hand, and the hammer coming in contact with the rail or some other hard surface caused it to fire. Again we present an extract from plaintiff's testimony:

"Q. Show the jury how you were wearing that at the time it fell. Just put it on like you were wearing it actually.

Note: Witness does so.

By Mr. Martin:

"Q. Take your hand down. Now, let's see you make it fall. Can't you make it fall? Turn it over, take your hand away and let's see you make it fall. Take your hand and make it fall then.

"A. It fell out all right.

"Q. Can you make it fall now? Can't you tumble it around or do anything under heaven to make that thing fall? Is that the way it happened?

"A. Fell out of the holster; yes.

"Q. Did you put your hand on it to make it fall?

"A. No; but I was drowsy and sleepy that day and I don't know how it fell out.

"Q. You were drowsy and sleepy and you don't know how it fell out?

"A. It fell out of the holster though.

"Q. Isn't it a fact that you have a habit of carrying your pistol up your sleeve?

"A. No; I ain't that crazy.

"Q. What?

"A. I ain't that crazy to carry my pistol up my sleeve.

"Q. Isn't it a fact that you had a habit of carrying your pistol in your hand?

"A. Sometimes I used to carry—when I would have any trouble down the track I would go—put it in my hand and go down the track under a light there.

"Q. Isn't it a fact that you carried it in your hand so much that people asked you if you were not using it for a walking stick?

"A. No, sir.

"Q. Did you have the pistol in your hand at the time it fell?

"A. No, sir.

"Q. And you didn't have it up your sleeve?

"A. No.

"Q. You didn't have it in your hand?

"A. No.

"Q. You had it stuck in your holster like it belonged?

"A. It was in the holster."

It would seem, therefore, that the weapon itself, and the appliances for carrying it, were reasonably safe for the purpose for which used; that the accident was in no sense caused by any defects therein, and that assuming for the moment the application of the sixteen hour law and its violation which is negligence, there is no causal connection between its violation

and the pistol being taken from its perfectly safe container and in some unknown way caused to explode.

"The rule clearly deducible from these four cases is that, on the one hand, an employee cannot recover under the safety appliance act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury. * * *." *Davis* v. *Wolfe*, 264 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284.

[3] It follows, therefore, that whether there were errors in the instructions or not is only of academic interest. No other verdict could possibly have been rendered than was returned by the jury, and the learned trial court should have entered judgment thereon for the defendant.

[4] Under the well settled law of this State it becomes unnecessary to consider or pass upon the rulings of the court in the second trial. *Clark* v. *Hugo*, 130 Va. 101, 107 S. E. 730.

The case must be reversed and judgment entered here in favor of the defendant in accordance with the verdict of the jury as returned at the hearing on the first trial of the case.

*Reversed.*