# Wytheville

## H. J. ROSSER, ADMINISTRATOR v. ATLANTIC TRUST & SECURITY COMPANY.

June 10, 1937.

Present, All the Justices.

The opinion states the case.

*Crumpler & Crumpler, C. D. Morrisette* and *Alfred Anderson,* for the plaintiff in error.

*Rixey & Rixey* and *C. C. Sharp,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the ruling of the trial court in setting aside a verdict for $6,000, returned in behalf of the plaintiff in a tort action, brought against the Atlantic Trust and Security Company, to recover damages for the wrongful death of Mrs. Maggie O. Grishaw, who lost her life in a fire which partially destroyed a building owned by defendant.

The contention of plaintiff is that the owner was negligent because it failed to equip the building with a metal fire escape, as required by the building code of the city of Norfolk, and that having proven this negligence, the question of proximate cause was properly submitted to the jury.

In the memorandum opinion of the trial judge, it is stated that he did not consider it necessary to decide whether the building code of Norfolk was applicable, as he was firmly of the opinion that plaintiff's evidence was not sufficient to establish that the failure to erect a fire escape was the sole proximate cause of the death of Mrs. Grishaw. As we agree

with this conclusion of the trial judge, we will confine the discussion to whether or not the evidence was sufficient to sustain the finding of the jury on the question of proximate cause.

The necessary facts to be stated are: In 1919, J. B. Sadler erected a three story brick building on a lot fronting 65 feet on Maltby avenue and extending back to Cromwell road. At that time this section was a part of Norfolk county, but was annexed to Norfolk city by proceedings instituted in 1922. In 1924, J. B. Sadler conveyed the property to his brother J. R. Sadler, who assumed payment of an outstanding mortgage for $11,000. Defendant acquired the property when this mortgage was foreclosed in 1927, and at the same time purchased from J. R. Sadler a vacant lot on one side of the building. On the opposite side was a four foot space or alleyway between the building in question and a store house. The first floor of this three story building was divided into two storerooms. The interior plan of the third story was the same as the second, and consisted of a center hall 70 feet in length, extending from the front to the rear, with two five-room apartments on either side. All rooms in each apartment had connecting doors, and doors opening into the center hall. There were two large frame porches, one on the front and the other on the rear of the building. Two stairways, front and rear, extended from the ground to the third floor, through these porches, with entrances from the porches into the center halls. These two stairways were the only means of ingress and egress to and from the apartments.

J. R. Sadler and his family had occupied the left rear apartment on the third floor from 1919 to the date of the fire, first as tenant of his brother, then as owner, and after the foreclosure in 1927, as tenant of the defendant. Mrs. Alice Sadler and Mrs. Maggie O. Grishaw, the mother and mother-in-law of J. R. Sadler, had been living with him in this apartment for more than a year prior to the tragedy. With permission of the owner, Mrs. Grishaw occupied a room attached to, and a part of, the front apartment on the same side of the center hall as the apartment occupied by Sadler. In this room

was stored wearing apparel and other personal property owned by members of the Sadler household. The entrance to this room was by a door opening into the hall. There seems to have been no door connecting the room with the Sadler apartment. The other rooms of this front apartment and the two apartments to the right on this floor were unoccupied.

About 5 p. m. on June 1, 1934, Sadler returned from work and ascertained from Mrs. Sadler and Mrs. Grishaw what they desired for supper. Leaving the women in the apartment, he went out to make purchases for the evening meal. While he was on this errand, a Mr. Dalton, who lived across the street at the back of this building, observed smoke coming out of the rear hall door on the second floor, and saw a woman taking clothes off a line on the second floor of the rear porch. He went up and assisted her with the clothes, and noticed that the smoke and heat were increasing in intensity. He asked her if everybody was out of the building, to which she replied in the affirmative. The smoke seemed to be coming out of the apartment on the second floor immediately under the one occupied by Mr. Sadler.

Mr. Sadler, while returning to the apartment, heard the cry of fire, and rushed back to the building. He was unable to use the rear stairway from the second floor to the third, but he climbed to the third floor by using the water spout and the framework of the porch. He entered his apartment through the rear center hall door. Being unable to locate the women, he traversed the full length of the center hall, with arms outstretched, hoping thereby to find them in the dense smoke. He came back from the front door of the hall to the rear porch, caught a breath of fresh air, and re-entered his mother's bedroom through a window overlooking the porch. He felt over the bed for his mother, but was unable to locate her. The smoke and heat in the meantime had become so intense that he was momentarily overcome and had to be assisted from the building, making his escape by means of a ladder.

Due to the delay in giving the fire alarm, or due to the delay of the firemen in responding to the alarm, the fire had

gained considerable headway by the time the fire chief and his assistants arrived on the scene. At any rate no rescue seems to have been attempted through either the front or rear entrance, or windows to the apartments. After the fire was put out, the burned bodies of Mrs. Sadler and Mrs. Grishaw were found lying outside of the Sadler apartment, near the center of the hall. Within three feet of the front entrance was found a large pile of partly burned clothing owned by members of the Sadler household, and which had been stored in the room occupied by Mrs. Grishaw.

The stairway on the rear, from the second to the third story, was scorched, and the timbers somewhat charred, but on the following day was strong enough to be used by several parties. The top of the stairway on the front porch, leading from the third floor, was not so badly burned, and was usable after the fire.

The provisions of the ordinance (Building Code, section 690) upon which plaintiff relies are: "Every building of these grades of C, D, or E class of construction, three stories or more in height shall, except as otherwise specified, be provided with one fire escape for each twenty-four rooms or fraction thereof, exclusive of bath or toilet rooms, on a floor. Every building of these grades of A or B class of construction, three stories or more in height, shall, except where otherwise provided, have at least one fire escape from each apartment or flat without passing through any other apartment or flat; and they shall be so arranged that access may be had thereto from all rooms without passing any unenclosed stairway or elevator shaft."

■ While from other sections of the building code, particularly sections 775, 778 and 780, there is some doubt of the application of any of the provisions of the building code to the building in question, in the disposition of this case we have assumed that the provisions were applicable, and that the failure to erect a metal fire escape on the building convicts the owner of negligence. Proof of this negligence, however, is not enough to entitle plaintiff to recover. He must prove one other essential; namely, that such negligence was the sole

proximate cause of the death of Mrs. Grishaw. *Wyatt* v. *C. & P. Telephone Co.*, 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386; *Norfolk & W. Railway Co.* v. *Wellons' Adm'r*, 155 Va. 218, 154 S. E. 575; *Norfolk-Southern R. Co.* v. *Mabe*, 146 Va. 813, 132 S. E. 692; *Bassett & Co.* v. *Wood*, 146 Va. 654, 132 S. E. 700; *Edwards* v. *Laurel Branch Coal Co.*, 133 Va. 534, 557, 114 S. E. 108.

Plaintiff contends that under the provisions of section 960, heretofore quoted, it was the duty of the owner to have changed the interior plan of the building, to provide a cross hallway in the center of the building, with a fire escape located on the side, thereby making "a fire escape opening from a public hall." Plaintiff contends further that a fire escape so erected "was the only location which would have afforded access and safe exit convenient to all occupants of the building alike in the event of fire, thereby conforming to all ordinances and rendering the required steel and concrete fire escape effective. If the fire escape had been so located, one of the fire escapes would have been situated at the very window where the deceased appeared."

As we read the ordinance, it does not specifically designate any particular location for a fire escape. Such exits and fire escapes could have been built at either the front or the rear of the building at the option of the owner. In no event would such an exit have been available to occupants unless such occupants could have reached an outside opening, which Mrs. Grishaw seems to have been unable to do.

The evidence indicates that the fire started in the apartment on the second floor, just beneath the one occupied by the Sadler household. Smoke was seen coming out of the hall on the second floor. One witness, from a building across the street, had time to reach the second floor, in the rear, and assist an occupant on that floor in salvaging her clothes. After these parties reached the ground Sadler used the same stairway to get to the second floor, and went to the third floor, into the building through the rear entrance to the hall, and twice transversed the entire length of the hall. He came out of the rear porch, and again entered the building through a window to his mother's room, calling continually, without

avail, to the women. The women were not in the hallway, nor were they in that part of the apartment searched by Sadler.

Soon after the explosion, smoke in varying intensity was seen coming from the front, as well as from the rear entrance to the halls. Later it was seen coming out of the windows to the side and rear. One witness testified that he saw a woman on the third floor at the second window from the rear, apparently trying to raise the window. The exhibits filed in the case show that there were six windows on this side of the building, and that even if the fire escape had been located as plaintiff says it should have been, the woman at the second window from the rear would have been just as near the rear porch as she would have been to an opening on the fire escape from a cross hallway erected in the center of the building.

Captain Trailer, chief of the fire prevention bureau of the city of Norfolk, testified that the building had been inspected by his men once a month ever since the building had been taken into the city; that the owner had always complied with all requirements of the fire department; and that in his opinion the stairways afforded adequate fire protection.

The fire chief and his assistants testified that they had had years of experience in fighting fires; that even after they arrived, if either of the women at any time during the fire had reached either the front or rear porch they would have been saved. It affirmatively appears that there were three exits from each apartment, doors opening into the hallway, with a front and rear entrance, and two windows opening on the porch, so that even if the fire and smoke blocked the exit through the rear entrances of the hall, two other exits were available, one down the center hall to the front, and the other through the rear windows on the porch.

The physical facts indicate that the women discovered the fire in time to escape in safety through the front entrance to the hall, but after attempting to salvage some of the personal property stored in Mrs. Grishaws's bedroom, for some reason they returned to or near their apartment, and were overcome by the smoke and heat.

■ Sympathy for regrettable tragedies of this nature is

one of the redeeming traits of mankind. It evidently found a responsive chord in the hearts of the jury, but when the trial judge had taken time to carefully analyze the evidence, he found, as we do, that there was no proof of any causal connection between the sad death of Mrs. Grishaw and the alleged negligence of defendant.

*Affirmed.*