# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MARTHA HANCOCK V. NORFOLK AND WESTERN RAILWAY COMPANY.

### March 1, 1928.

1. AUTOMOBILES—*Railroads—Accident at Crossing—Negligence of Defendant Unimportant where Contributory Negligence Shown—Case at Bar.*— The instant case was an action for damages for personal injuries as a result of the car in which plaintiff was riding being in collision with defendant's train. The major portion of the testimony taken by the plaintiff was offered for the purpose of proving the negligence of defendant. But owing to the view of the case taken by the appellate court this question was unimportant, because the court was of the opinion that the right of recovery must turn upon the question of the plaintiff's contributory negligence, which presupposes the primary negligence of the defendant, and is quite independent of the negligence of the driver of the car which could not under the facts of the case be imputed to the plaintiff.

2. AUTOMOBILES—*Crossings—Imputable Negligence—Negligence of Driver not Imputed to a Passenger—Duty of Passenger to Use Ordinary Care— Contributory Negligence.*—The negligence of the driver is not to be imputed to a passenger, but it is the duty of a passenger to use ordinary care for his own safety. The railroad track is to him, as to others, a signal of danger, and his failure to exercise reasonable precaution for his own protection is contributory negligence and bars a recovery.

3. AUTOMOBILES—*Crossings—Guest to Exercise Ordinary Care.*—It is the duty of one who is riding in an automobile as a passenger, when about to cross a railroad track, to look and listen for approaching trains, and to warn the chauffeur of the near approach of a train, and prevent him from attempting to cross the tracks close in front of the train, and a failure to perform this duty amounts to negligence. He must use reasonable care to learn of the approach of a train and to keep out of its way.

4. AUTOMOBILES—*Crossings—Guest to Exercise Ordinary Care—Case at Bar.*—The instant case was an action for damages for personal injuries as a result of the car in which the plaintiff was riding being in collision with defendant's train. From the evidence it was obvious that had the plaintiff, who was on the front seat, looked

for the on-coming train, as it was her duty to do, it could have been seen in ample time for her to have cautioned the driver of the impending peril.   Plaintiff was riding on the lap of one of the occupants of the front seat, which placed her farther to the front of the car than either of her companions.   Had she looked she could have seen the engine further up the track than the driver.   Plaintiff admittedly did not look towards the on-coming train.

*Held:*   That plaintiff was guilty of contributory negligence which barred her recovery.

5.   AUTOMOBILES—*Crossings—Look and Listen.*—It is the duty of a traveler before attempting to cross a railroad track at a crossing to look in both directions and to listen for approaching trains.   The duty of looking and listening before crossing a railroad track must be discharged in a way to make looking and listening effectual.

6.   AUTOMOBILES—*Crossings—Ordinary Care to be Exercised by Passenger Sitting on the Lap of Another—Case at Bar.*—In the instant case, an action by a guest in an automobile against the railroad for damages for injuries resulting from a collision at a crossing between the automobile and defendant's train, plaintiff was sitting across the lap of another passenger in the car, facing away from the approaching train, but this furnished no excuse for plaintiff not looking both ways when about to cross a railroad track with the location of which she was familiar.   A person cannot disqualify themselves from observing the ordinary rules of prevision for their safety and then plead the self imposed conditions as an excuse for failure to exercise vigilance.   To have turned her head, and her body if necessary was a simple and easy movement in her position.

7.   AUTOMOBILES—*Crossings—Duty of Passenger—Case at Bar.*—In the instant case plaintiff, a passenger in an automobile, was injured in a collision between the automobile and a train at a crossing.   Whatever may have been the difficulties in the way of a clear vision of the approaching train, they could not have contributed to the accident in so far as plaintiff was concerned, as she admittedly made no effort to overcome the difficulties or to observe the dangers toward which they recklessly rushed.   "Thoughtlessness is negligence."

*Held:*   That plaintiff could not recover because of her contributory negligence.

8.   AUTOMOBILES—*Crossings—Look and Listen—Contributory Negligence—Questions of Law and Fact.*—There are cases in which the question as to whether the traveler was guilty of negligence in going on the track without looking and listening is one for the jury; as, for example, where there was a silent gong, where the watchman failed to perform his duty, flying switches, etc.

9.   STARE DECISIS—*Opinions of Court—Construction.*—It is axiomatic that

expressions of the courts must be interpreted as applying to the facts of the case with reference to which they are used, and, therefore, cannot always be relied upon to establish the law in cases of the same general character but with material differences as to the facts.

10. AUTOMOBILES—*Crossings—Contributory Negligence—Questions of Law and Fact—Case at Bar.*—The instant case was an action against a railroad for injuries sustained by a passenger in an automobile when the automobile and a train of defendant collided at a crossing. The law in Virginia requires a passenger or guest in an automobile to use ordinary care for his safety in approaching and crossing a railroad track. This law plaintiff confessedly ignored and was immediately in collision with the locomotive. Under this state of facts the law fixes negligence upon her, and there is no issue for the jury to determine.

Error to a judgment of the Circuit Court of Appomattox county, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*S. L. Ferguson, Joel W. Flood,* and *Volney E. Howard,* for the plaintiff in error.

*W. Moncure Gravatt,* for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

This was an action at law brought in the Circuit Court of Appomattox county for damages for personal injuries as a result of the car in which plaintiff was riding being in collision with defendant's train. At the trial, defendant demurred to the evidence which the court sustained, and entered judgment for the railway company. Plaintiff brings error.

The parties in this court occupy the same positions

as in the court below and will be referred to as they appeared there.

Plaintiff was injured on July 11, 1925, at a highway crossing in the corporate limits of the town of Pamplin, when the open Ford "runabout" in which she was riding came in collision with the east bound passenger train No. 8 of the defendant company, in the afternoon of that day.

There were in the car at the time two men and Martha Hancock, the plaintiff. The highway crosses the railway at right angles and runs north and south, and the car in which plaintiff was riding was traveling north. Frizzell Cole was driving the car and Sampson Madison was on his right, with the plaintiff, Martha Hancock, sitting across his lap, with her face turned toward the east.

The plaintiff's contention is that the defendant was negligent in approaching the crossing without giving timely warnings to travelers on the highway and particularly at this place which was permitted to be and remain in a dangerous condition as a direct result of which she was injured.

The position of the defendant company may be best understood by a reading of its demurrer to the evidence, which follows:

"1. Because the plaintiff's negligence in going on the crossing without looking in a westerly direction from which train No. 8 was coming is the sole proximate cause of her injury.

"2. Because plaintiff's evidence shows that the defendant's train crew performed the duties required of those in charge thereof in the matter of giving the warning signals demanded by law in approaching said crossing.

"3. Because the evidence shows the defendant was

not guilty of any negligent act which was the sole proximate cause or the proximate cause of the injury complained of.

"4. Because the plaintiff's negligence contributed to and caused the injury complained of and bars her right to recover in this case irrespective of the alleged negligence of the defendant.

"5. Because plaintiff admits that she went on the crossing without giving the train a thought, without asking the driver to stop before going on the crossing and without looking in both directions, although she admits she had seen the tracks and knew the railroad was in front of her, having been to Sizemore's store before and over this crossing, and this conduct was negligence on her part which bars her right to recover.

"6. Because plaintiff's evidence shows that there was a space of ten feet or more south of the south rail of this crossing at which an automobile could be stopped and the occupants see a train approaching from the west for a considerable distance, and plaintiff could likewise have seen had she looked.

"7. Because plaintiff having accepted the invitation to ride in the automobile cannot fail to look and listen and shut her eyes to danger, and then claim that the driver is negligent and that because she could not operate the car or handle the control thereof she is no way responsible for his negligence, because her failure to look and listen under these circumstances is also negligence which bars her right to recover.

"8. Because plaintiff and Cole, the driver, were engaged in a joint enterprise and the negligence of the driver bars plaintiff's right to recover.

"9. Because the evidence fails to show any negligent act of the defendant, or its agents, which was the sole proximate cause of the plaintiff's injury, the defendant having performed every act required of it."

27

The accident having occurred within the corporate limits of the town of Pamplin, although practically in the country, about 550 yards west of the station, and no ordinance having been enacted regulating the signals or warnings to be given by railway trains in approaching crossings therein, it is conceded that the common law duty to give reasonable and timely warnings controls, and section 3958 of the Code has no application.

It would seem unnecessary to restate the law which controls the courts in determining whether or not a demurrer to the evidence should be sustained. This being before us upon a demurrer, the well known principles applicable in such cases must apply and be determinative of the conclusions that should be reached.

[1] The major portion of the testimony taken by the plaintiff was offered for the purpose of proving the negligence of the defendant in approaching the crossing where the collision occurred.

In our view of the case this question becomes unimportant, because we are of the opinion that the right of recovery must turn upon the question of the plaintiff's contributory negligence, which for the purpose of this discussion pre-supposes the primary negligence of the defendant, and is quite independent of the negligence of the driver of the car which could not under the facts of this case be imputed to the plaintiff.

The law in this State defining the duty of a passenger or invited guest while riding in a vehicle which collides with a locomotive, has been declared in the case of *Southern Railway Company* v. *Jones' Admr.*, 118 Va. 685, 88 S. E. 178, wherein Judge Keith says:

[2] "The negligence of the driver is not to be imputed to a passenger, but ·it is the duty of a traveler to use ordinary care for his own safety. The railroad track is to him, as to others, a signal of danger, and his failure to exercise reasonable precaution for his own protection is contributory negligence, and bars a recovery."

The same doctrine is announced in *Atlantic & D. R. Co.* v. *Ironmonger*, 95 Va. 629, 29 S. E. 319; *Virginian R. Co.* v. *Skinner*, 119 Va. 843, 89 S. E. 888. These cases are in accord with the views expressed by the courts of last resort in a large majority of the States of this country.

"An automobile passenger is bound to exercise ordinary care for his own safety, without which the injury received in a collision is attributable to his own negligence." *Carpenter* v. *Atchison*, 51 Cal. App. 60, 195 Pac. 1073.

"All that can be required of a guest in an automobile, who has no control over it, is to look and listen and warn the driver of approaching danger at a crossing." *Parker* v. *S. A. L. Ry. Co.*, 181 N. C. 95, 106 S. E. 755.

"A guest riding in the front seat with the driver of an automobile is required, in the exercise of ordinary care, to keep a vigilant lookout for trains when approaching a railroad crossing." *Barrett* v. *Chicago M. & St. Ry. Co.*, 190 Iowa 509, 175 N. W. 950, 180 N. W. 670.

"Though a passenger in automobile was merely a guest, it was his duty, on approaching a railroad crossing, to look and listen according to his opportunity, and, if he did not, he assumed the risk." *Robison* v. *Oregon-Washington R. & Nav. Co.*, 90 Or. 490, 176 Pac. 594.

"One riding with another driving an automobile over a railroad crossing must exercise due care for his own safety by looking and listening, whether he is a

guest or otherwise." *Hurt* v. *Yazoo & M. V. R. Co.,* 140 Tenn. 623, 205 S. W. 437.

"Passenger in automobile who did not request driver to stop or take necessary precautions while approaching dangerous railway crossing was guilty of contributory negligence barring recovery for personal injury from collision, though no signal was given." *Morris* v. *Chicago, B. & Q. R. Co.,* 101 Neb. 479, 163 N. W. 799.

Berry on Automobiles (4th ed.), section 590 states the law as follows:

[3] "Collisions with railroad trains—Duty of occupant. It is the duty of one who is riding in an automobile as a passenger, when about to cross a railroad track, to look and listen for approaching trains, and to warn the chauffeur of the near approach of a train, and prevent him from attempting to cross the tracks close in front of the train, and a failure to perform this duty amounts to negligence.

"He must use reasonable care to learn of the approach of a train and to keep out of its way."

These authorities leave nothing to be supplied by this court in fixing the degree of care for his own safety to be observed by a passenger or guest riding in an automobile, when approaching a railroad crossing.

[4, 5] Did the plaintiff observe that care immediately prior to the injury which the law imposes upon her?

From the photographs filed in the record, and the undisputed testimony of the witness who took the pictures, it appears that in approaching the east bound track of the railroad, and thirty-three feet from its center, a man can be seen on the south track 297 feet west of the crossing, and when twenty-one and one-half feet from the center of the east bound track, he can be seen a distance of 934 feet west from the crossing.

An approaching engine could be seen as far, perhaps considerably further.

It seems obvious, therefore, that had the plaintiff looked for the on-coming train, as was her duty to do, it could have been seen in ample time for her to have cautioned the driver of the impending peril.

"This court has repeatedly held that the duty of looking and listening for approaching trains before crossing a railroad track must be discharged in a way to make looking and listening effectual." *U. S. Spruce Lumber Co.* v. *Shumate*, 118 Va. 471, 87 S. E. 723; *Southern Railway Company* v. *Jones*, 106 Va. 412, 56 S. E. 155; *Murden* v. *Virginia Railway and Power Company*, 130 Va. 449, 107 S. E. 660.

"It is the duty of a traveler, before attempting to cross a railroad track at a crossing, to look in both directions and to listen for approaching trains." *Norfolk, etc., R. Co.* v. *Sink*, 118 Va. 439, 87 S. E. 740.

A very able discussion of the law on this general subject has been contributed by Judge Kelly in *Washington, etc., Ry. Co.* v. *Zell*, 118 Va. 755, 88 S. E. 309.

In the very recent cases of *Virginian Railway Company* v. *Farr*, 147 Va. 217, 136 S. E. 668, and *Norfolk and Western Railway Company* v. *James*, 147 Va. 178, 136 S. E. 660, the court dealt with the rights of a passenger to recover from a railway company for injuries received while riding in an automobile. In both cases verdicts for the plaintiffs were sustained, but the reasons given by the court are quite sufficient to justify this court in reaching the opposite conclusion in this case.

In both of these cases the plaintiffs were traveling in the night. Knew nothing of the perils of the road, had no opportunity of knowing, and, therefore, no reason to remonstrate with or warn the driver of dangers unseen and unknown.

[6] In the case in judgment, plaintiff in the day time was riding on the lap of one of the occupants of the front seat, which placed her farther to the front of the car than either of her companions. Had she looked she could have seen the engine further up the track than the driver. Sitting across the lap of Sampson Madison furnished no excuse for not looking both ways when about to cross a railroad track with the location of which she was familiar.

A person cannot disqualify themselves from observing the ordinary rules of prevision for their safety and then plead the self imposed conditions as an excuse for failure to exercise vigilance. To have turned her head, and her body if necessary, was a simple and easy movement in her position on this ill-fated car.

Our attention has been called to the topography of the surroundings at the point where the highway and tracks of the railroad cross, and the difficulty of seeing an approaching train at the place where the collision occurred.

The facts as to this question have been heretofore adverted to, and a careful consideration of the evidence and the photographs of the important points referred to therein demonstrate that vigilance on the part of the plaintiff would have presumably avoided the injury.

[7] Whatever may have been the difficulties in the way of a clear vision, they could not have contributed to the accident in so far as the plaintiff is concerned. She admittedly made no effort to overcome the difficulties or to observe the dangers toward which they recklessly rushed. "Thoughtlessness is negligence." *Southern Railway Co.* v. *Mauzy*, 98 Va. 692, 37 S. E. 285.

[8] There are cases in which the question as to

whether the traveler was guilty of negligence in going on the track without looking and listening is one for the jury. This class of cases is discussed and the distinction applicable here, indicated by Judge Buchanan in *Boyd* v. *Southern Railway Co.*, 115 Va. 11, 78 S. E. 548; *Chapman's Admr.* v. *Hines*, 134 Va. 287, 115 S. E. 373.

In giving the exceptions to the general rule in *Boyd* v. *Southern Railway Company, supra,* the court says:

" 'In the case of *Kimball & Fink* v. *Friend*, 95 Va. 125, 27 S. E. 901, where there was a silent gong, and in *Southern Railway Co.* v. *Aldridge*, 101 Va. 142, 43 S. E. 333, where the watchman failed to perform his duty, it was held that the question of negligence on the part of the travelers in going upon the crossing where injured, was a question of fact for the jury, under all the facts of those cases, and not a question of law for the court.' Judge Buchanan further says:

" 'It has also been held that the traveler's negligence is a question for the jury where he attempts to cross a railway track immediately after one train has passed and another follows so quickly as to mislead or confuse him and he is injured. And in cases of flying switches, where the train has been severed and the traveler goes upon the crossing after the first section has passed and is struck by the second; and also where a traveler seeing a train pass on or towards the main line of the railroad, goes upon the track and is injured by the train immediately returning.' " *Chapman's Admr.* v. *Hines*, 134 Va. 274, 281, 115 S. E. 373. See also *Etheridge* v. *Norfolk Southern R. Co.*, 143 Va. 789, 129 S. E. 680.

[9] It is urged by plaintiff's counsel that the negligence of Martha Hancock should have been submitted to a jury.

There are opinions without number dealing with this

question, and the language used in many instances, if disassociated with the circumstances of those particular cases, would appear to sustain that contention, but it is axiomatic that expressions of the courts must be interpreted as applying to the facts of the case with reference to which they are used, and, therefore, cannot always be relied upon to establish the law in cases of the same general character but with material differences as to the facts.

What issue has the jury to determine in the instant case? The facts are undisputed and unequivocal.

[10] The law in Virginia requires a passenger or guest in an automobile to use ordinary care for his safety in approaching and crossing a railroad track. This law she confessedly ignored and was immediately in collision with the locomotive. Under this state of facts the law fixes negligence upon her, and there is no issue for the jury to determine. *U. S. Spruce Lumber Co.* v. *Shumate,* 118 Va. 471, 87 S. E. 723; *Norfolk Southern R. Co.* v. *Sink,* 118 Va. 439, 87 S. E. 740; *Southern Railway Company* v. *Vaughan,* 118 Va. 692, 88 S. E. 305, L. R. A. 1916E, 1222, Ann. Cas. 1918D, 842; *Virginia and Southwestern Ry. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887; and *Murden* v. *Va. Ry. & Pow. Co.,* 130 Va. 449, 107 S. E. 660.

There is a class of cases of which *Virginia Railway and Power Co.* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838, is a type, where the wife of a careful driver is not required to be on guard for her own safety. These are usually cases where the accidents occur on city streets between an automobile and a street car.

The distinction between collisions of this character, where there is ceaseless commotion and the crossing of car tracks at every city block, and those occurring

upon the rural highways where they intersect railway main line tracks, are quite obvious.    We are of the opinion that the *Gorsuch Case* was not intended to overrule the doctrine stated by Judge Kelly in the *Zell Case* to be "settled law in this jurisdiction" and is not controlling of the case in judgment.    *Campion* v. *Eakle*, 79 Colo. 320, 246 Pac. 280, 47 A. L. R. 289; *Hunsavage* v. *Rocek*, 74 Colo. 163, 219 Pac. 1080.

The precautions taken by the plaintiff just prior to the accident may best be gleaned from her own language:

"Q. You were in the car you say because who asked you?

"A. Frizzell Cole..

"Q. Was Sam Madison in the car also?

"A. Yes, sir; he was in there also.

"Q. And you were sitting in his lap?

"A. I was sitting on his lap.

"Q. You don't know how fast the car was traveling before it got to this crossing?

"A. I really don't know.

"Q. You were sitting facing towards the station at Pamplin?

"A. Yes, sir.

"Q. When you went over the track?

"A. Yes, sir.

"Q. So that you neither stopped nor looked towards the west, from which this train was coming, before you went upon that crossing?

"A. Only slowed up.

"Q. You did not look towards the west at all?

"A. No, sir.

"Q. You were looking to the east in the direction of the station at Pamplin?

"A. That is where I was looking.

"Q. And you never gave a single look towards the west, from which this train was coming?

"A. No, sir.

"Q. Now you being in Sam Madison's lap were nearer the front of the car than either Madison or Cole, weren't you?

"A. Yes, sir.

"Q. So that if you had turned your head and looked towards the west you would have been in the best position to see the train coming of any of the three in the car, you being out nearer the front of the car and sitting up higher than they, weren't you?

"A. Yes, sir.

"Q. I also understood you to say that you were a little deaf and couldn't hear good anyhow; you said that when Mr. Howard asked you the question.

By Mr. Howard: "No, she didn't say that.

By the court: "Yes, she did say that, Mr. Howard.

By Mr. Gravatt:

"Q. I am correct in that; you cannot hear very good, can you?

"A. No, sir.

"Q. And the car you were in did not stop before going on the track?

"A. No, sir.

"Q. And you did not look in the direction in which the train was coming before the car got to the crossing. Now did you ask Frizzell Cole to stop or say to him 'let's look and see if the train is coming?'

"A. No, sir; I didn't; I didn't think anything about the train at all.

"Q. You didn't pay any attention to it?

"A. No, sir.

\*   \*   \*   \*   \*   \*   \*   \*

"Q. And No. 8 was an eastbound train and you knew that, didn't you?

"A. Yes, sir.

"Q. And you knew about what time that was due too, in the afternoon, didn't you?

"A. Yes, sir; I knew it was in the afternoon.

"Q. And you knew it had not run this afternoon when you were up there, didn't you?

"A. No, sir; I didn't know.

"Q. You had been over to Mr. Sizemore's store before, hadn't you?

"A. I had been a long time ago.

"Q. When you were sitting in Sam Madison's lap, riding up towards that crossing, facing down towards the depot at Pamplin, you could see the railroad tracks in front of you, couldn't you, before you got up to the crossing?

"A. Yes, sir; I could have seen them.

"Q. They were there in plain view?

"A. Yes, sir; I could have seen them if I had been taking notice.

"Q. There was no reason why you couldn't see the crossing and the tracks and look out if you had wanted to?

"A. If I had been thinking anything about the train, but I didn't have any thought about the train; I didn't know it was train time at all.

"Q. But there was no reason in the world why you couldn't look out there, or have made Frizzell Cole stop that car so you could see if you wanted to.   He would have stopped if you had asked him?

"A. I reckon so, if I had asked him, but it was his business, he was driving.

"Q. But if you had asked him to stop and look for a train at the crossing, he would have stopped?

"A. Yes, sir; but I never had any thought about the

crossing whatever.   I hadn't been used to the crossing and I hadn't thought about the crossing.

"Q.  Before you got up there you did see the Norfolk and Western tracks up there west of the Norfolk and Western station?

"A. I knowed the Norfolk and Western track run down there."

The plaintiff was heedless of those rules for her safety, declared necessary by the great majority of the courts of this country as prerequisites to a recovery. She was clearly guilty of concurring negligence, without which in all probability she would not have sustained the injuries complained of, and we are therefore of opinion that the demurrer was rightly sustained, and the judgment must be affirmed.

*Affirmed.*

CHRISTIAN, J., dissenting:

The majority opinion holds that Martha Hancock was a passenger or guest in the car and that the well settled rule of law applicable to her is, where a passenger is in a private vehicle by invitation and is exercising no control over the driver, and is injured through the combined negligence of the driver and a third person, the negligence of such driver cannot be imputable to the passenger.   If precluded from recovery it must be because of his *own independent negligence.* *Virginia Railway and Power Company* v. *Gorsuch*, 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838; *Virginian Railway Company* v. *Farr*, 147 Va. 217-228, 229, 136 S. E. 668; *Norfolk and Western Railway Company* v. *James*, 147 Va. 178-187, 136 S. E. 660.

The above cases and all the cases on this subject hold if the guest fails to look and listen, and does not

know that the driver is running heedlessly into danger, he is not negligent, as the law does not impose upon him the duty of control or direction of the driver or to anticipate that the driver will be negligent.   The law does not require a guest to presume or anticipate that the driver will be negligent, but the law permits him, unless the contrary appears, to presume the driver will manage the car carefully and properly.   "A duty to give such advice implies a duty to heed it, and the rear seat driver is responsible for many accidents as the score stands without judicial precedent.   The place for a passenger who knows better than a driver of a car when, where and how it should be operated is at the wheel."   *Director General* v. *Lucas*, 130 Va. 212, 217, 107 S. E. 675, 677.

The opinion then holds that Martha Hancock was located further to the front of the car than the driver, and if she had looked to the west, could have seen the train, because the photographs showed that twenty-five feet from the track all occupants of the car could see a train 284 feet to the west, therefore, she was guilty of such independent negligence that barred her recovery, and the fact that her back was turned to the west from direction the train was approaching was no excuse for not looking.

These photographs were taken in January after the accident when the leaves were off the honeysuckle upon the fence upon the top of the railroad cut, and the accident occurred in the summer when it was in full foliage.   The plaintiff's evidence proved that the noiseless train could not be seen until car got within *ten feet* of the south rail of the track.   This is admitted in the defendant's grounds of demurrer where it says: Because the train could be seen when the car got within *ten feet or more* of the track.

· If *Chapman's Admr.* v. *Hines,* 134 Va. 274, 115 S. E. 373, is the law in Virginia, and there was only ten feet in which the train could be discovered and no bell was rung or whistle blown, which must be admitted as proven upon the demurrer to evidence, then the court cannot hold Cole the driver was negligent as a matter of law for failure to discover the train and avoid the accident.

I have never seen a case and I do not believe one can be found where upon a demurrer to evidence where the demurrant waives his evidence, in conflict with the demurree's, and admits the truth of the demurree's evidence and all just inferences arising from the same; *where the court has adopted the waived evidence and based its judgment thereon.*

But it may be contended that, no matter what was the distance between the cut and south rail in which the train might have been seen, Martha Hancock sitting in the lap of Madison with her back to the track nearer the front of the car and could have seen it sooner than Cole the driver, therefore, she was guilty of contributory negligence that caused the accident. It does not appear how large any of the parties were and the defendant offered no evidence to prove she was nearer to the front of the car than the driver, and this is mere conjecture. If she was an average person she would have been only eighteen inches nearer the front with her back turned, which seems to me to be *de minimis.*

But this question of the *location* of a passenger in a vehicle imposing the duty on him to look in both directions has been decided adversely to the majority opinion by the Supreme Court in *Atlantic and Danville R. Co.* v. *Ironmonger,* 95 Va. 625, 29 S. E. 319; the railroad asked the court to give an instruction making

it the duty of the passenger, if so located in the vehicle as to have an opportunity to discover the danger and to inform the driver of it, and if he failed, then he was guilty of negligence.    The instruction asked is as follows:

"The court instructs the jury that the rule that the negligence of a driver of a vehicle is not to be imputed to a passenger is not applicable where the passenger is so located in the vehicle as to have an opportunity to discover the danger and to inform the driver of it, and if the jury believe from the evidence that the plaintiff was so situated in the carriage as by the use of her senses of hearing or sight she might have discovered the approaching danger in time to inform the driver of it, and for him to have avoided it, and did not do so, then they must find for the defendant, unless they further believe from the evidence that the defendant might, after discovering the plaintiff's negligence, have avoided its consequences."

About this instruction Judge Buchanan said:

"This instruction assumes that the rule of law, that the negligence of the driver cannot be imputed to the passenger, is not applicable where the *passenger is so located* in the vehicle as to have an opportunity to discover the danger and inform the driver of it.   Where the passenger, as in a case like this, is in the vehicle by the invitation of the owner and driver, and is exercising no control over him, the negligence of the driver cannot be imputed to the passenger.   If the passenger has himself been guilty of negligence he is precluded from recovery by reason of his own negligence, and not because of the negligence of the driver.

"Upon the question of her own negligence instruction No. 5, given for the plaintiff in error, stated the law as strongly in its favor as it was entitled to.   The court

did not err in refusing to give the rejected instruction (No. 6)."

Instruction No. 5: "The court instructs the jury that the rule requiring a traveler on a highway, on approaching a railroad crossing, to have his senses on the alert to discover and avoid danger from an approaching train, is not relaxed in favor of one who is being carried in a vehicle owned and driven by another; it is no less the duty of the passenger, where he has the opportunity to do so, than of the driver to learn of danger and avoid it, if practicable. That plaintiff was seated in a carriage, owned and driven by one Francis Reiger, that the curtains were up so that the plaintiff could see in the direction from which the engine was coming, and that by looking and listening the plaintiff could have discovered the approaching engine in time to avoid it, then they must find for the defendant even though they may believe that the defendant was negligent, unless the defendant, after discovering the negligence of the plaintiff, could have avoided its consequences."

According to instruction number five given in the *Ironmonger Case*, it was the duty of Martha Hancock if the train had been approaching from the east and by the exercise of her sense she could have discovered the same, she should have done so and warned Cole.

It is impossible for me to discover from this record any other cause for Martha Hancock's injury but the combined negligence of the defendant and the driver, Cole. The ground upon which the majority opinion is based never occurred to counsel upon either side of this case, and was never mentioned in the argument before this court, nor is it suggested, *much less specifically* set forth, in its ground of demurrer as required in the mandatory statute, section 6117 of the Virginia Code.

The defendant, in its written grounds of demurrer,

specified that Martha Hancock was engaged in a joint enterprise or pleasure adventure with Cole and Madison, and had the same duties to look and listen imposed upon her as was imposed upon them, and therefore Cole's negligence was imputable to her. No suggestion is made of her duties as a passenger nor any suggestion that she was guilty of independent negligence therein.

It cited the cases of *Washington and Old Dominion Railway Co.* v. *Zell*, 118 Va. 755, 88 S. E. 309, and *Bowman* v. *Pennsylvania R. Co.*, 179 Fed. 577, 103 C. C. A. 136, 29 L. R. A. (N. S.) 924, as authority to sustain its position. If the *Zell Case* decided what it claimed, then Cole's negligence was Martha Hancock's negligence and she cannot recover. Judge Prentis in the opinion of the court in the *Gorsuch Case, supra,* which was the first case to pass upon this question after the *Zell Case,* established the law to be in Virginia that in order for the occupant of a car to be liable for the negligence of the driver he must have the right to control and direct the driver. The right to control and direct the driver is necessary before the driver's negligence is chargeable to the other occupant of the car.

Judge Kelly, who delivered the opinion of the court in the *Zell Case* and certainly should know what he intended to decide, in *Director General* v. *Pence's Admx.*, 135 Va. 329, on page 345, 116 S. E. 351, 356, said: "But the 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim *qui facit per alium facet per se* is applicable."

This same distinction and statement of the law is enunciated in the recent cases of *Virginian Railway Company* v. *Farr, supra,* and *Norfolk and Western Railway Company* v. *James, supra.* In the *Farr Case* the law as laid down in the *Gorsuch Case* and *Pence Case,* together with the *James Case,* are reaffirmed, and the court goes further and states that the *Gorsuch* and *Pence Cases* have restricted the rules of law in the *Zell Case.*

The case of *Director General* v. *Pence's Admx., supra,* makes clear the distinction between an occupant who has the right of control and direction over driver, and an occupant who is merely a passenger. In this case, as in the instant case, it was the contention of defendant that Stillwell, the driver, and Pence were engaged in a joint enterprise, therefore it was Pence's duty to look and listen for the train, and his failure was contributory negligence that barred recovery. As authority for that position the defendant cited the *Zell Case, supra; Virginia & Southwestern Ry. Co.* v. *Harris,* 119 Va. 843, 89 S. E. 887; and *Southern Ry. Co.* v. *Jones,* 118 Va. 685, 88 S. E. 178, just as was done in this case, but the court overruled that contention and held that as a matter of law Pence was a passenger and had the right to rely upon the driver and the *Zell Case* had no application to the *Pence Case,* and the *Jones* and *Skinner Cases* also involved a different principle of law.

In the *Pence Case,* Stillwell and Pence were approaching a railway crossing in the day-time where there were three tracks. The Wheeler track on which was a box-car that prevented the main line from being seen, the passing track and the main line. Both parties were upon the front seat, and the main line and train were plainly visible to both of them after they passed the Wheeler track, had they looked. Stillwell, the

driver, stopped the car before reaching the Wheeler track, and then started forward at about five miles an hour; the vision of the main line on which the train was moving widened from 340 feet after crossing the Wheeler track to 1,728 feet in the middle of the passing track. Neither party apparently looked in the direction from which the train was approaching. Stillwell, the driver, drove up the main line in front of the train and Pence was killed. The defendant claimed Pence was guilty of such contributory negligence in failing to look, and discover the train and warn the driver, that as a matter of law barred recovery. The court held there was nothing to make Pence believe that Stillwell would not stop the car and avoid the accident, and the evidence warranted the jury in finding Pence was not guilty of negligence *in relying upon the driver.*

It is plain that Supreme Court does not hold as law that when a traveler is about to cross a railway track, the track is notice of danger, and if the passenger fails to look in both directions and warn the driver he is guilty of contributory negligence. If Pence was not guilty of negligence in failing to warn Stillwell, how can Martha Hancock, when Cole slowed up as he approached the crossing, be declared negligent in not warning him if she had the right to rely on the driver, until she had reason to believe he was going to drive on the track?

The *Jones* and *Skinner Cases* were also relied upon in the *Pence Case*, but Judge Kelly distinguished those cases from that case, and some distinction is applicable in case at bar. That is failure to look in both directions and warn the driver is not *per se* negligence. He said on page 346 (116 S. E. 357): "The case of *Va. S. W. Ry. Co.* v. *Skinner*, 119 Va. 843, 89 S. E. 887, and *Southern Ry. Co.* v. *Jones*, 118 Va. 685, 88 S. E.

178, both of which are relied upon very strongly by
counsel for defendant are, as we think, distinguishable
from the case at bar by the fact that in both of them
the *negligence of the driver was necessarily apparent to*
*the passenger,* whereas in this case the passenger was
justified in assuming that the automobile would stop
before the collision occurred.''

The only possible distinction that the law can and
does make between a person riding in a vehicle who
has the right to control and direct the driver and a
passenger is that the latter may rely upon the driver
until *his negligence is apparent,* whereas the former
must exercise the same degree of care as the driver is
required by law to exercise.

The majority opinion states that if the passenger is a
wife driving with her husband whom she knows is a
careful driver she may rely on him, and construes the
*Gorsuch Case* to make that restriction. This construc-
tion is contrary to the *Ironmonger Case* and all the cases
in Virginia that are cited above, as far as I could dis-
cover them, and to the general rule in all other States,
except Michigan and perhaps Wisconsin. *Terwilliger*
v. *Long Island R. Co.,* 152 App. Div. 168, 136 N. Y. S.
733, note Ann. Cas. 1913B page 684.

It is an uncontrovertible fact that the combined
negligence of Cole and defendant was the cause of
plaintiff's injury. The defendant specified in its
written grounds of defense that Martha Hancock and
Cole were engaged in a joint enterprise. The case
was argued before us upon that principle of law. The
plaintiff's argument and authorities was to repel that
legal contention. No mention or suggestion of the
ground upon which the majority has based its decision
was ever suggested as far as I remember, and I doubt
if it ever occurred to counsel on either side.

Section 6117 of the Virginia Code was enacted to cover in part just such a case as this. It requires the demurrant to set out specifically its written grounds of defense, and forbids this court to consider any grounds not so specifically set out. If Martha Hancock was a passenger and not engaged in a *joint enterprise*, does not this mandatory statute require that it should set out specifically in writing; and further what her independent negligence was?

The Supreme Court has held this statute mandatory, and if grounds of defense are not set out specifically the court is without jurisdiction to consider them if the grounds set out are so general that two or more grounds are contained in one specification it cannot be considered. How then can defendant specify that plaintiff was engaged in a joint enterprise, and as such was negligent in not looking in the direction from which the train was coming, and prevail on the ground that she was a passenger guilty of independent negligence? Are not these rights and duties as distinct as those of the driver and the passenger? No mention is made of the specific negligence of Martha Hancock, set out in the opinion. *Black* v. *Daughtry*, 130 Va. 24-31, 107 S. E. 694; *McMenamin* v. *Southern Ry. Co.*, 115 Va. 822, 80 S. E. 596.

I have not an opportunity to read the cases cited from other jurisdictions, but from the statements of the general rule quoted, as with the Virginia cases herein discussed, I am satisfied that the same duty is not imposed by law upon a passenger as is imposed upon the driver.

The importance of this decision to the profession is my apology for writing such a long dissenting opinion.