# Wytheville

ESSIE K. MIZE, ADMINISTRATRIX, ETC. v. GARDNER MOTOR
COMPANY AND SOUTHERN RAILWAY COMPANY.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Meade, Meade & Talbott,* for the plaintiff in error.

*Barksdale & Abbot, Harris, Harvey & Brown, A. Lynch Ward, Jr.,* and *Thomas B. Gay,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error as administratrix of the estate of George Talmadge Mize, deceased, brought an action at law against the partners of the Gardner Motor Company and the Southern Railway Company to recover damages for the death of Mize, who was riding as a passenger in an automobile belonging to the Gardner Motor Company and being driven by its agent, Turner, when he was killed by a passenger train of the Southern Railway Company at a grade crossing in the village of Schoolfield, just a short distance from the city of Danville. The jury rendered a verdict in favor of the administratrix against both defendants for the sum of $9,214.00. The trial court set the verdict aside and entered final judgment in favor of both defendants on the ground that Mize was guilty of contributory negligence as a matter of law which barred any recovery for his death.

The Southern Railway Company maintains its double track railroad through the village of Schoolfield. These tracks at the Stuart avenue crossing run practically east and west. The Riverside and Dan River Cotton Mills, Incorporated, is located to the north of the tracks, while a considerable portion of the residential section of the village lies to the south of the tracks. Stuart avenue is a street in the village which was constructed and is owned

and maintained by the cotton mills corporation and it crosses the double tracks of the Southern Railroad at practically right angles. On the northern side of the right-of-way of the railway company is located State highway number 29, which parallels the tracks for a distance of something like 1,000 feet both east and west from Stuart avenue. The crossing is used by the public at large as well as the workers employed in the mill. The concrete surface of the State highway is twenty feet wide and the distance from the southern edge of the pavement to the northernmost rail of the tracks is forty-four or forty-five feet. The road leading from the pavement on and over the tracks is of rocks and cinders and is practically level with the highway. Southbound trains use the north tracks while the northbound trains use the south tracks.

The plaintiff's intestate who lived a short distance from the crossing and in sight of it, worked in the mill. He was thoroughly familiar with the crossing, having to use it every day in going to and from his work. Roy Turner, an automobile salesman, employed by the Gardner Motor Company, was negotiating with Mize for the sale and purchase of a new Plymouth car. On April 11th at about 4 o'clock, Turner went to the mills to get Mize so that the transaction might be completed. The day was clear. The car was in good mechanical condition. Mize got in the car with Turner who drove westerly along State highway number 29 towards Mize's home.

Just prior to the time that Turner drove upon the crossing a freight train had passed going north and another train known as number 46 was due to pass at the time. Train number 135 going south was due to pass in about twenty-five minutes.

Turner had proceeded up State highway number 29, just prior to reaching Stuart avenue, in a careful manner driving at twenty-five miles per hour. For most of the distance as he proceeded on State highway number 29, a train moving in the same direction in which they were going could have been seen without difficulty. At a point

about 300 feet before Stuart avenue is reached, the level of the highway sinks to about nine feet below the level of the railroad tracks and this might partially obstruct the view of a train approaching from the north. When Stuart avenue was reached Turner reduced the speed of the car to fifteen miles per hour and turned left into Stuart avenue and proceeded at a slow rate of speed estimated by some of the witnesses at fifteen miles and by one eye witness at five miles per hour when the front wheels went over the tracks. At this moment the "Crescent Limited," a fast passenger train, seven hours late, running down grade at an estimated speed of from sixty to seventy miles per hour approached on the southbound track. Immediately before the train struck the car either Turner or Mize or both of them screamed. Both were killed.

During the trial of the case the plaintiff in error sought to invoke what is commonly called the comparative negligence doctrine which is embraced in section 3959 of the Code, but the trial court refused to apply that doctrine to this particular crossing because its view was that Stuart avenue is not a public highway. This ruling on the part of the court is made the basis of one of the assignments of error but from our view of the case it will not be necessary to decide this point.

The main point in the case, which will be conclusive of it, is whether or not Mize, the passenger in the automobile was guilty of contributory negligence as a matter of law which bars his recovery or whether that question was properly submitted to the jury.

If Mize was guilty of contributory negligence as a matter of law there could be no recovery against the Gardner Motor Company nor against the Southern Railway Company, unless the comparative negligence doctrine (section 3959) applies. The trial court held the view that it was a jury question and submitted it to the jury under comprehensive instructions. Later, in passing upon the motion to set aside the verdict which had been rendered for the plaintiff the court was of the view that it was not a

jury question but one of law. Therefore the correct determination of whether the asserted contributory negligence of Mize was one of fact for the jury or one of law for the court will dispose of this case.

The jury by its verdict has established that both defendants in error were negligent—the railway company in failing to give the signals for the crossing and the Gardner Motor Company, through Turner, its agent, in driving upon the tracks immediately in front of the fast approaching train; that such negligence was the proximate cause of the accident and that Mize was not guilty of contributory negligence. It is not argued that the negligence of these defendants in error has not been established nor do they now seek to escape liability upon the ground that they were not negligent. Their entire effort here is to fasten contributory negligence upon Mize as a matter of law.

There is a difference in the degree of care required of a passenger in a car from that required of the driver when approaching a railroad crossing. Under certain circumstances the driver may be negligent in going on a crossing while his passenger may be free from negligence, but we cannot conceive circumstances under which the passenger could be guilty of negligence in being driven over the crossing without negligence on the part of the driver. This indicates a difference in the care required of each.

The duty of a passenger in a car which is about to be driven over a railroad crossing is clearly defined in the cases of *Hancock* v. *Norfolk & W. Ry. Co.*, 149 Va. 829, 141 S. E. 849, and *Norfolk & W. Ry Co.* v. *Wellons' Adm'r,* 155 Va. 218, 154 S. E. 575, 578. The rule is that a passenger must look and listen for approaching trains and warn the driver of the near approach of a train. But in the *Wellons Case, supra,* we said that "the guest should not undertake to drive and may trust the driver until it becomes plain that such trust is misplaced."

The difference in the duty of a passenger and that of a driver arises by reason of the fact that the driver has

physical control of the car. Ordinarily the passenger has no duty to direct and control the driver unless it is obvious that the driver is taking no precautions for their safety. If there is no apparent danger in the manner in which the driver is operating the car the passenger is not required to interfere.

The quotation made by Judge Prentis in *Director General* v. *Lucas,* 130 Va. 212, 107 S. E. 675, 677, from the opinion by Burke, J., in *Hedges* v. *Mitchell,* 69 Colo. 285, 194 P. 620, is applicable here. He said:

"It is contended that some duty devolved upon plaintiff (a passenger on the rear seat of defendant's automobile) to warn and guide defendant as to his route of travel, his speed, etc., and that neglect to discharge that duty constituted such contributory negligence as to defeat recovery. If such be the law, the instructions given were ample. But a duty to give such advice implies a duty to heed it, and the rear seat driver is responsible for enough accidents as the score stands, without the aid of judicial precedent. The place for a passenger who knows better than the driver of a car when, where and how it should be operated is at the wheel."

In *Norfolk & W. Ry. Co.* v. *Wellons' Adm'r,* 155 Va. 218, 154 S. E. 575, it was held that an open gate maintained by the company at a grade crossing was remote negligence and not an invitation to the driver to attempt to beat the train to the crossing. The driver's negligence was the sole present proximate cause of the accident and superseded the remote negligence of the railway. The statutory bell and whistle signals were given. The driver of the truck in which the plaintiff's decedent was riding drove in front of an oncoming train on level land and in plain view in the face of bell and whistle. This conduct on his part was unquestioned negligence. The fact that the gates were up did not contribute to the disaster. The driver saw or should have seen the approaching train which was imperative warning for him to stop. The court held that there was no causal connection between the remote neg-

ligence of the railway and the accident and that the driver's negligence in racing the train to the crossing was solely the proximate cause.

The distinction between that case and the one at bar is plain. The statutory signals in that case were given while in the present case the jury has found that they were not given. There the driver raced the train to the crossing while here the driver approached the crossing slowly, according to one witness, at five miles per hour. There the negligence of the railway was in maintaining an open gate while here it consisted in failing to give the signals. There the sole proximate cause of the accident was the driver's negligence, while here the driver's principal, the Gardner Motor Company, is a party defendant and if the driver's negligence was the sole proximate cause of the death of Mize the plaintiff should recover against that defendant in any event. There the driver's administrator (the driver having been killed also) was not a defendant.

In *Hancock* v. *Norfolk & W. Ry. Co., supra,* it was held that the failure of the plaintiff, who was a passenger in an automobile, to look and listen for an approaching train which was visible and to warn the driver and prevent him from attempting to cross the tracks close in front of it was such contributory negligence on her part as barred her recovery as a matter of law. The fact that she failed to look and listen for the train and that she failed to warn the driver or to take any precaution for her own safety was established by her own testimony. She testified that she neither looked nor listened though she could have seen the train if she had looked.

In the case at bar both Mize and Turner, the driver of the car, were killed. The burden of proving that Mize failed to look and listen for the train and to warn Turner of its approach was upon the defendants. There is no evidence that Mize failed to perform his duty. It is useless, in the absence of any evidence, to indulge in speculation and conjecture as to whether he looked and listened for the train and whether he conducted himself upon the

occasion as a man in the exercise of ordinary prudence and care for his own safety. We do not know what he said or did. It was incumbent upon the defendants to prove that he failed in his duty. This they have not done.

When the evidence as a whole is closely examined it in substance establishes the fact that Turner drove the car on the crossing at a speed of from five to fifteen miles per hour without stopping and he and Mize were killed; that the train was approaching closely at high speed at the time and in plain view of them and that one or both of them "hollered" just as they were struck. This is sufficient to fasten negligence upon Turner. The jury has so found. But it is not sufficient as a matter of law to fasten negligence upon Mize. Negligence, whether primary, contributory or concurring is never presumed from the happening of an accident. There is a presumption against negligence. It must always be affirmatively proven. If it might be inferred from the fact that Turner drove slowly in front of the train, that Mize failed to look and listen for the train and to warn Turner in time to avoid being struck and was thus negligent, then it could just as reasonably be inferred that Mize performed his duty; looked and listened for the train and warned Turner of its approach in time and that Turner refused to heed the warning; or, it might be inferred that Mize saw the train and thought that Turner by reducing the speed of the car would stop before going on the track. If it be reasonable to draw inferences from the happening of the accident and thus supply the essential evidence to establish contributory negligence, then the jury, and not the court, was the proper tribunal to give such weight and consideration to such inferences as were warranted. We think that the negligence of Mize, if any, was for the jury to determine and not for the court.

It is difficult to find railroad crossing cases that are similar. No two of them are alike in their facts though the principle applicable to them is the same. The difficulty is presented when we attempt to apply the well estab-

lished rules of law to the varying facts that arise. Some of the cases have held that the negligence of the passenger is a question of law for the court, and others, that it is a question of fact for the jury. Of the former type the cases of *Hancock* v. *Norfolk & W. Ry. Co., supra,* and *Norfolk & W. Ry. Co.* v. *Wellons' Adm'r, supra,* are illustrative. Of the latter class the cases of *Director General* v. *Pence's Adm'x,* 135 Va. 329, 116 S. E. 351, 357, and *Southern Ry. Co.* v. *Whetzel,* 159 Va. 796, 167 S. E. 427, are illustrative.

Judge Cardozo in speaking of the contributory negligence of a passenger who is about to be driven over a railroad crossing made these significant remarks in *Baker* v. *Lehigh Valley R. Co.,* 248 N. Y. 131, 161 N. E. 445, 447:

"Contributory negligence is urged, but again the jury must decide. If Vardon, the driver, were the plaintiff, a different question would be here. The actual question is one as to the contributory negligence, not of driver, but of passenger. The case being a death one, the burden of proof as to this issue was laid on the defendant. *Nicholson* v. *Greeley Square Hotel Co.,* 227 N. Y. 345, 125 N. E. 541; *Chamberlain* v. *Lehigh Valley R. Co.,* 238 N. Y. 233, 144 N. E. 512. Baker may have given warning, and his warning may have been unheeded. There is testimony by Vardon that he was silent, but Vardon was a hostile witness. Nor is this the only explanation whereby Baker would be cleared of fault. Believing the car was about to stop, he may have thought that warning would be needless, and, discovering too late that the car was going on, he may have thought that interference would be dangerous. These and like possibilities were to be estimated by the triers of the facts. They make it impossible to deal with the issue as a question for the court."

In *Director General* v. *Pence's Adm'x, supra,* it was charged that Pence, a passenger in a car who was killed at a railroad crossing was guilty of contributory negligence as a matter of law. There were obstructions at the crossing which partially obscured the view of the tracks.

The driver was proceeding to make the crossing slowly with the car under control. "Pence sat still and said nothing. We cannot say why he did this. It may be that he saw and heard the train. If so, he might naturally and reasonably have assumed that Stillwell (the driver) also saw it, and would stop before reaching the main track." The court concluded that under all of the circumstances the question of the contributory negligence of Pence was for the jury and not for the court.            ;

It is urged that this case loses some of its force as authority for the plaintiff in error because there were obstructions to the view of the tracks. This was considered by the court. The only effect of the obstructions was to impose upon both Pence and the railway a greater degree of caution. *Atlantic & D. Ry. Co.* v. *Reiger*, 95 Va. 418, 28 S. E. 590.

In *Chesapeake & O. R. Co.* v. *Meyer*, 150 Va. 656, 143 S. E. 478, 482, in concluding that the passenger could not be charged with negligence as a matter of law the court held:

"It is true that a passenger cannot blindly trust to his driver, but in the nature of things one on the back seat is not required to exercise that degree of vigilance which is demanded of the chauffeur. *Director General* v. *Lucas*, 130 Va. 212, 107 S. E. 675, and *Hancock* v. *Norfolk & Western Railway Company*, 149 Va. 829, 141 S. E. 849, *infra*.

"The record indicates that the driver was negligent, but if she was that negligence cannot be imputed to Meyer, whether he be regarded as a guest or as a passenger in a private car. *Washington & O. D. Ry. Co.* v. *Zell*, 118 Va. 755, 88 S. E. 309; *Virginia Ry. & Power Co.* v. *Gorsuch*, 120 Va. 655, 91 S. E. 632, *Ann. Cas.* 1918B, 838; *Director General* v. *Pence*, 135 Va. 329, 116 S. E. 351; *Virginian Ry. Co.* v. *Farr*, 147 Va. 217, 136 S. E. 668; *Seaboard Air Line Ry. Co.* v. *Terrell*, 149 Va. 344, 141 S. E. 231; and *Hancock* v. *Norfolk & Western Ry. Co.*, 149 Va. 829, 141 S. E. 849 (decided March 1, 1928).

"The plaintiff's decedent can be charged, as a matter of law, with neither primary nor imputed negligence."

In *Southern Ry. Co.* v. *Whetzel,* 159 Va. 796, 167 S. E. 427, it was held that the contributory negligence of Whetzel, 14 years of age, who was killed at a railroad crossing while riding in an automobile as a passenger was a question for the jury. The comparative negligence doctrine (section 3959) was applied in this case. There was also the question of the failure of the gong to sound. However, it was urged that the failure of the gong and the failure to give the statutory signals were not the proximate cause of the accident and bore no causal connection to it; that the negligence of the driver in driving on the tracks under the circumstances was solely responsible and that Whetzel was guilty of contributory negligence. There are distinguishing marks between that case and the case at bar, yet that case but emphasizes the fact that as a general rule the contributory negligence of a passenger in a car who is killed in a crossing accident is primarily for the jury.

We are of opinion that the judgment should be reversed, and that the verdict of the jury is supported by the evidence. It will be reinstated and judgment now entered thereon in favor of the plaintiff in error against both defendants in error.

*Reversed.*