**SMITH et al. v. GAY et al.**

**No. 6247.**

United States Court of Appeals
Fourth Circuit.

Argued June 12, 1951.

Decided July 17, 1951.

Henry H. Whiting and J. Sloan Kuykendall, Winchester, Va., for appellants.

H. K. Benham and J. Edward Thoma, Winchester, Va. (Harrison, Benham & Thoma, Winchester, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Lelia M. Smith and her fifteen year old daughter, Bonnie Sue Smith, were injured on December 28, 1948, at 8 P. M., when the Ford car in which they were riding on a three-lane highway near Kernstown, Virginia, was struck from behind by a truck, loaded with chickens, which belonged to Shelton M. Gay, and was driven by Herod Mathias. Two suits, one for each of the injured persons, were brought against Gay and Mathias for the negligent driving of the truck, and were tried together. The jury found a verdict for the daughter in the sum of $925; and, since they had

been instructed that no. negligence on the part of the driver of the Smith car could be imputed to her but that a verdict could not be rendered in her favor unless Mathias was negligent, their finding indicated that the chicken truck had been negligently driven.

The jury, however, found for the defendants in the mother's case, and since they had been instructed that she was not entitled to recover if negligence on her part in the management of the Smith car contributed to the accident, it is evident that they found contributory negligence on her part. They were not told that even if she was negligent, she was entitled to a verdict if Mathias saw or should have seen the Smith car in time to avoid the accident.

The appeal in the daughter's ·case is based entirely on the contention that the damages awarded were inadequate to compensate for the injuries suffered. The testimony as to the nature of her injuries was conflicting. On the one hand, certain doctors testified that she had sustained a fracture of the third lumbar vertebra; that she had worn a plaster cast for a long time and at the time of the trial, nearly two years after the accident, she was still wearing a metal and leather brace to support her back; and that on account of her injury she would be reduced to a life of sedentary activity. On the contrary, other medical testimony indicated that she suffered no fracture from the accident but was already suffering before the accident from a dormant condition of epiphysitis of the lumbar vertebra. There was also testimony that she returned to school a few days after the collision and engaged in the usual physical activities of a child of her age until ten months later when her doctor advised her to give them up. The persistence of her symptoms was said to be due to extreme obesity, poor body mechanism and the pre-existing epiphysitis. Under these circumstances the question was one for the jury and, upon motion for a new trial submitted by the plaintiff, for the judge, who carefully reviewed the testimony and concluded that the verdict should stand since it was supported by substantial evidence.

Since such a motion is addressed to the sound discretion of the trial court and may not be set aside except in the rare case of an abuse of discretion, which is entirely absent here, the judgment for the plaintiff in the daughter's case must be affirmed. See Virginia Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 408, 4 A.L.R.2d 1064; Frasca v. Howell, D.C.Cir., 182 F.2d 703.

The mother's case requires a statement of the evidence in greater detail. The Smith family resided on the west side of a heavily traveled three-lane highway, 29 feet wide, much used by passenger cars and trucks. On the night in question Lewis W. Smith, the father, backed his Ford car from his yard onto the highway and crossed it in a curve from west to east so that it faced north, and started slowly forward. Then it was struck from behind. At that time the child was riding in the back seat and the wife in the front seat to the right of her husband. He testified that he stopped before crossing the road, looked both ways, but saw nothing. His wife said that she also looked and saw nothing, and she made no protest and gave her husband no warning of approaching vehicles. There was an unobstructed view to the south of 1200 feet from the entrance to the Smith place, and the night was clear, so that the lights of automobiles traveling north were plainly visible. In fact three vehicles were traveling north at the time and arrived at the point of the accident very shortly after the Smith car backed into the road, that is, a tractor-trailer, a Cadillac and the defendants' chicken truck, in that order. First came the tractor-trailer, at the rate of 45 miles per hour. It overtook the Smith car and stopped beside it in the middle lane because of traffic approaching from the north. It was equipped with headlights and, in the rear, with stop lights on each side and red lights at the top and bottom of the vehicle. Next came the Cadillac car at 45 to 50 miles per hour. It was equipped with headlights and rear lights, and its driver, seeing the two vehicles ahead, either stopped or moving slowly, brought his car to a stop without striking them. The Cadillac had almost come to a stop close to the Smith car when the defendants' truck approached from the rear and came into collision, either first striking the Cadillac and then the Smith car, or vice versa, according to conflicting accounts of the accident. Mathias said he was driving the chicken truck at the rate of 40 miles per hour at a distance of about 100 feet behind the Cadillac car when he saw its stop lights go on, but he was unable to stop. According to his testimony the lights of cars coming from the north prevented him from seeing the cars in front of him until he was then 100 feet from the point of collision.

It is obvious from this recital that the jury would have been justified in finding that Mrs. Smith was guilty of contributory negligence in participating in the dangerous maneuver of driving the car into the heavily traveled highway in the night time. Since there was a clear view to the south for 1200 feet, the jury might well have found that the lights of the northbound vehicles were visible when the Smith car left the yard. They might have concluded that oncoming cars could not have gone more than 1200 feet while the Smith car was backing across the 29 foot road. Consequently the District Court was justified in submitting to the jury the issue of the contributory negligence of Mrs. Smith. It is established law in Virginia that when a passenger in a motor car observes a dangerous situation of which the driver is apparently unconscious, it is the duty of the passenger, if he can readily do so, to call the driver's attention to the danger and if he fails to do so, he is guilty of negligence. See Mize v. Gardner Motor Co., 166 Va. 415, 186 S.E. 108; Remine & Meade v. Whited, 180 Va. 1, 21 S.E.2d 743; Yellow Cab Co. v. Eden, 178 Va. 325, 16 S.E.2d 625; Montgomery v. Whitfield, 4 Cir., 188 F.2d 757; Campbell v. Roanoke Coca-Cola Bottling Works, 4 Cir., 189 F.2d 223.

It is, however, equally obvious that the jury might have found that it lay within the power of Mathias, notwithstanding the negligence of the Smiths, to have avoided the collision. Ahead of him were three cars and the rear lights of two of them at least were or should have been plainly

visible to him as he approached. This is demonstrated beyond doubt by the fact that the drivers of the tractor-trailer and the Cadillac saw the Smith car ahead and stopped in time. No one in this case has ventured to explain why Mathias could not have done as they did. Hence there was presented a perfect setting for the doctrine of the last clear chance which is established in Virginia and elsewhere to the effect that the contributory negligence of the plaintiff is no defense to his suit for injuries, based on the negligent conduct of the defendant, if the latter saw or by the exercise of ordinary care ought to have seen that the plaintiff was in a position of helpless or unconscious peril and had time to avoid the injury, but failed to do so.

In Southern R. Co. v. Bailey, 110 Va. 833, 844, 845, 67 S.E. 365, 369, 27 L.R.A.,N.S., 379, it was said:

"* * * where both parties have been guilty of negligence, as a general rule, there can be no recovery. There is really no distinction between negligence in the plaintiff and negligence in the defendant, except that the negligence of the former is called contributory negligence.

"The general rule adverted to is subject, however, to the qualification that where the negligence of the defendant is the proximate cause of the injury, and that of the plaintiff only the remote cause, the plaintiff may recover, notwithstanding his negligence; the doctrine in that respect being that the law regards the immediate or proximate cause which directly produces the injury, and not the remote cause which may have antecedently contributed to it. From that principle arises the well-established exception to the general rule that if after the defendant knew, or in the exercise of ordinary care ought to have known, of the negligence of the plaintiff, it could have avoided the accident, but failed to do so, the plaintiff can recover. In such case the subsequent negligence of the defendant in failing to exercise ordinary care to avoid injuring the plaintiff becomes the immediate or proximate and efficient cause of the accident, which intervenes between the accident and the more remote negligence of the plaintiff."

See also, Harris Motor Lines v. Green, 184 Va. 984, 37 S.E.2d 4, 171 A.L.R. 359; Anderson v. Payne, 189 Va. 712, 54 S.E.2d 82; cf. Restatement of Torts, §§ 478–80.

On this point the judge's charge was silent. The jury were clearly and forcefully told that no matter how negligent a person may be in the commission of an accident, the injured party cannot recover if he is guilty of some act of negligence on his part which was also a direct contributing cause. In applying this rule to the instant case the jury were told that if Mrs. Smith saw the approaching cars and failed to warn her husband of them, she was guilty of such negligence as would bar her recovery. The jury, however, were not told of the equally pertinent rule that the defendant must avail himself of the last clear chance to avoid an injury and that if he fails to do so he is liable in damages. Accordingly we hold that this omission was a prejudicial error which requires the reversal of the judgment for the defendants in the case of Mrs. Smith and the remand of the case for a new trial.

It is true that during the trial her attorneys insisted that there was no evidence of contributory negligence on her part to go to the jury and that the negligence of Mathias was the sole proximate cause of the collision, and no express reference was made to the doctrine of the last clear chance. The plaintiff, however, specifically objected to the court's charge on the ground that if there was evidence of contributory negligence on the part of Mrs. Smith, her negligence was not a proximate cause of the collision.

The matter was again brought to the attention of the court in the plaintiff's motion for a new trial which was based in part upon the ground that if Mrs. Smith was guilty of negligence, such negligence was not a proximate contributing cause of her injuries. At this time cases in Virginia were cited in which the plaintiff sought recovery for injuries alleged to have been caused by the negligence of two defendants, acting consecutively, and the question was whether one or both were liable to the plaintiff. Such a situation was considered

in Hubbard v. Murray, 173 Va. 448, 3 S.E. 2d 397, 401, where the court made the following statement: "From what was said in these cases we deduce the following general rule: Where a second tort-feasor becomes aware, or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter by an independent act of negligence brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof. The original negligence of the first tort-feasor is legally insulated by the intervening independent negligence of the second tort-feasor, and the latter becomes the sole proximate cause of the accident."

This principle is analogous to that underlying the doctrine of the last clear chance where the inquiry is whether the injuries suffered by the plaintiff in an action for damages were due to the concurring negligence of both plaintiff and defendant or were due to an independent act on the part of the defendant. In both situations, that of two negligent defendants, and that of a negligent plaintiff and a negligent defendant, the essential question, as we have seen from the quotations from the Virginia decisions above set out, is whose negligence was the proximate cause of the injury, and when this is answered the case is solved.

The point under discussion was inherent in the case presented to the court and an instruction as to the last clear chance should have been included in the charge in which the judge, rejecting all the requests of counsel, undertook to cover all the law of the case. There was sufficient compliance with Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in that the question of proximate cause was called to the judge's attention both before and after the submission of the case to the jury.

The judgment in the case of Bonnie Sue Smith is affirmed; and the judgment in the case of Lelia M. Smith is reversed and the case is remanded for a new trial.