### 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## CANODY v. NORFOLK & WESTERN RAILWAY COMPANY.

### January 20, 1921.

#### Absent, Sims, J.

1. CROSSINGS. — *Automobiles — Contributory Negligence — Case at Bar.*—A driver of an automobile truck stopped, looked and listened before reaching a crossing. At the point where he stopped, however, his view was obstructed. He made no further attempt to look or listen until just before he started across the track, when his attention was twice called to an approaching train by his helper, who was not in as good a position to see or to appreciate the danger as the driver. If the driver had responded to the first warning of the helper he might have saved himself. The driver contended that he could not look for the approaching train because he had to guide the truck across the tracks. The crossing, however, was smooth, fifteen feet wide, perfectly straight, and at right angles with the tracks.

   *Held:* That the driver was guilty of contributory negligence.

2. CROSSINGS—*Automobiles—Last Clear Chance—Case at Bar.*— Where plaintiff, the driver of an automobile truck, was approaching a crossing very slowly, at the rate of two miles an hour, in perfect possession of all of his faculties, the operatives of a train, if there was no obstruction to their vision, were justified in presuming that he would stop before attempting to cross immediately in front of the rapidly approaching train, and if they could have seen him thus approaching the crossing, with apparent care, then of course he also could have seen the train equally as well. The doctrine of last clear chance has no application to the case.

Error to a judgment of the Circuit Court of Appomattox County in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*S. L. Ferguson* and *F. C. Moon,* for the plaintiff in error.

*F. S. Kirkpatrick, W. H. Mann* and *F. M. Rivinus,* for the defendant in error.

PRENTIS, J.; delivered the opinion of the court.

H. L. Canody was injured by a train of the Norfolk and Western Railway Company, at an unprotected highway crossing in the village of Appomattox, while driving a heavily loaded automobile truck. He proceeded by a motion for the recovery of damages for his injuries, and at the conclusion of the testimony the company demurred to the plaintiff's evidence, which demurrer the court sustained and entered judgment for the company, of which action the plaintiff is here complaining.

[1] While the record is voluminous and the arguments both lengthy and exhaustive, as we comprehend the case, it is only necessary for us to refer to those conceded facts which under well established rules of law are decisive of the issue involved. It appears from the plaintiff's own evidence that, having stopped at a point on the south side of the railway tracks just before making a sharp turn to cross the railroad at a right angle, he stopped, looked and listened, and failed to hear or see any approaching train. At this point, however, his vision to the east, from which the train which injured him approached, was intercepted by a small hill. He then turned his machine, and, according to his own testimony, several times repeated, did not make any further attempt to look for approaching trains until his peril was imminent and his attention was sharply called thereto by his helper, who was riding on the rear end of the truck, facing west, in the opposite direction to that from which the train approached. He and his attorneys undertake to explain and excuse this failure to look

for and protect himself against the danger by claiming that it required his entire attention to guide the machine across the track, and therefore that he was forced to look straight ahead. It appears that if he had looked again when he was within ten feet of the first of the four tracks, he could have seen at least one thousand yards down the railroad looking east; that his helper, Mayberry, who was several feet further away from the track sitting on the rear end of the truck and hence not in as good a position to see as he was, saw the train first, just as the machine pulled up on the crossing about on the first track, sharply called his attention twice to the danger, and when Mayberry reached the conclusion that a collision was inevitable, he jumped from the rear end of the truck between the first and second tracks and thus saved himself. The plaintiff himself testifies that when he first heard the warning and looked, the train was one hundred yards from him, that he was on the second track, and that he nevertheless continued to go forward, quickly changing the speed of his machine from low speed to second speed because he thought it more dangerous to stop then than to go forward, and the rear end of the truck was struck before it cleared the third track. He also claims that his view was obstructed by a local freight train, standing on the eastbound track, and that the noise of the engine of the automobile interfered with his hearing. The train was running very rapidly, sounded no crossing signal and rang no bell.

As the case is before us upon a demurrer to the evidence, we have stated the facts as strongly as the record justifies in favor of the plaintiff, but it is due to the railway company to say that if the testimony of its witnesses is true, there was nothing to obstruct his vision, that the signals required by statute were given, and that its agents were guilty of no negligence.

Inasmuch, however, as the company's negligence is admitted by the demurrer to the evidence, the only question before the trial court as well as before us is whether or not the plaintiff's action is barred by his own contributory and concurring negligence.

It seems to us very clear indeed from the plaintiff's own testimony that the proximate cause of the accident was his own failure to look and listen for approaching trains just before he started to cross the tracks. Every one of his own witnesses introduced to testify as to the circumstances of the accident, none of whom were under any duty to observe the approaching train, testify that they both saw and heard it before the accident occurred, and when it was a considerable distance away from the point of collision. It is contended that he was excused from looking for danger after he approached the track close enough to see, so as to make such looking effective, because it was necessary for him to guide the automobile truck across the tracks. The crossing, however, was smooth, fifteen feet wide, made of cinders, perfectly straight, at right angles with the tracks, and there was no danger or obstruction in front of the machine to be evaded. It would have required only an instant to observe the tracks looking both east and west while the machine was moving slowly at two miles per hour, from the point ten feet south of the first track until he reached the second track, and had he been paying even as much attention as his helper, Mayberry, who was not in as good a position to see or to appreciate the danger, he would certainly have seen the train sooner than Mayberry saw it. Even if he had been on the alert otherwise, as he should have been, and had responded to the first warning which Mayberry gave him when he was pulling up on the first track, he could have saved himself, because, as is clearly shown, he could then have stopped the machine within two feet. He himself testified repeatedly that he saw the train when it was 300 feet away from him, and

the irresistible conclusion from these facts is that by the exercise of ordinary care he could have avoided the collission.

We do not deem it necessary to follow counsel in the discussion of the principles of law involved. They have been fully and carefully discussed many times in this and in other courts, notably in the case of *Washington & Old Domionion Railway* v. *Zell's Adm'r.*, 118 Va. 755, 88 S. E. 309, in which many pertinent authorities are cited and summarized. In that case there is this accurate and succinct statement, so clearly apposite in view of the conceded facts of this case: "The negligence of the driver of the car is perfectly manifest. He had no right to proceed across the track without looking and listening for a train. The greater the danger, the greater was the measure of his duty. If he did not see or hear a train when he first reached the point at which the obstruction began to pass from his westward vision along the track, then it was his duty to continue to look and listen until he reached the track. The very contention made here that he had to be close to the track before he could see any distance to the west, emphasizes the importance of caution on his part. If the running of his machine interfered with his hearing or looking, it was his duty to stop and look and listen, so as to make looking and listening effective.

Travelers approaching a public crossing must bear in mind that, while their rights and those of the railroad company at that point are 'mutual, reciprocal and co-extensive' in general, the law has always accorded, and in the nature of the case must accord, to a moving train the right of way."

Other recent cases decided by this court are, *Brammer's Adm'r.* v. *N. & W. Ry. Co.*, 104 Va. 50, 51 S. E. 211; *United States Spruce L. Co.* v. *Shumate*, 118 Va. 471, 87 S. E. 723; *Virginia & Southwestern Ry. Co.* v. *Skinner*, 119 Va. 843, 89 S. E. 887.

[2]   The claim of plaintiff in error that the doctrine of discovered peril, or last clear chance, applies to this case cannot be sustained.   The plaintiff was approaching the track very slowly, at the rate of two miles an hour, and was in perfect possession of all of his faculties.   The operatives of the train, if there was no obstruction to their vision, were justified in presuming that he would stop before attempting to cross immediately in front of the rapidly approaching train; and if they could have seen him thus approaching the crossing, with apparent care, then of course he also could have seen the train equally as well.

We find, therefore, that notwithstanding the conceded negligence of the company, the plaintiff's own concurring and contributory negligence was the proximate cause of his injury, and the trial court committed no error in so deciding.

*Affirmed.*