## Wytheville

# WASHINGTON AND OLD DOMINION RAILWAY v. WALTON C. THOMPSON.

### June 14, 1923.

### Absent, Kelly, P.

1.  APPEAL AND ERROR—*Crossings—Conflicts in Evidence—Conclusiveness of Verdict—Negligence.*—In an action for injuries at a crossing, where there was positive evidence to the effect that defendant was free from negligence, and evidence to the contrary, the verdict of the jury for the plaintiff must be regarded as settling the question in his favor.

2.  CROSSINGS—*Collision with Automobile—Contributory Negligence—Case at Bar.*—In an action for injuries arising out of a collision at a crossing, plaintiff testified that he stopped seven or eight feet from the rail of the track, looked down the track, from which the car was approaching, but as his view was obstructed by a bank of earth with bushes growing on it, he could not see it, but that he could see about thirty or forty feet down the line, and the overhead line upon which the trolley moved for about a hundred feet. He then proceeded to cross the track without again looking.

    *Held:* Taking plaintiff's testimony and the testimony of a witness for plaintiff and the physical fact that plaintiff was struck within the few seconds that it took him to drive his car upon the track, it was evident that he was recklessly negligent in attempting to cross when the car was so near.

3.  CROSSINGS—*Contributory Negligence—Looking and Listening.*—Notwithstanding the fact that a driver approaching a crossing stopped, looked and listened for a train before attempting to cross, if his view of the track was obstructed, it was his duty on proceeding to cross the track to continue to look and listen for approaching trains.

4.  LAST CLEAR CHANCE—*Burden of Proof—Possibility of Saving Plaintiff.*—It should and must be emphasized that a plaintiff is not entitled to recover under the doctrine of the last clear chance upon a mere peradventure. He has no right to hold the defendant liable merely upon showing that perhaps, if the defendant's agents had responded properly, promptly, instantaneously, he might have been saved. The burden is upon him to show affirmatively by a preponderance of the

evidence which convinces the average mind that by the use of ordinary care, after his peril was discovered, there was in fact a clear chance to save him. It is insufficient to show that there was a mere possibility of so doing.

5.   LAST CLEAR CHANCE—*Crossings—Case at Bar.*—In the instant case it appeared from plaintiff's own evidence and that of one of his witnesses that he attempted to cross the track at a time when if he had looked a second time he would have seen that the approaching car was almost upon him. The fact that the plaintiff stopped his automobile within seven feet of the crossing was an indication to the motorman that he would not again move until after the car had passed. If, on the contrary, he approached the crossing cautiously, without stopping, and could have easily seen the approaching car, then the motorman was justified in believing that he would stop and remain in a place of safety.

6.   CROSSINGS—*Duty to Stop at Crossing—Statute.*—The statute which requires drivers of vehicles to stop at railroad crossings on public highways in the country is certainly to be commended as tending to promote safety.

7.   INSTRUCTIONS—*Numerous Instructions.*—In the instant case the plaintiff offered nine instructions; the defendant offered sixteen. Some of these were modified. The case involved only three relevant but distinct propositions. Three instructions or one instruction clearly drawn, embodying all three, would have assisted the jury, but it is apparent that in so simple a case so many instructions could only have confused and misled the jury.

Error to a judgment of the Circuit Court of Fairfax county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*W. J. Lambert* and *Wilson M. Farr*, for the plaintiff in error.

*J. W. Rust* and *Walter Tansil Oliver*, for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This is an action for personal injury to Walton C. Thompson when an automobile which he was driving was struck at a highway crossing by one of the cars of the Washington and Old Dominion Railway, which was operated by electricity.   There was a verdict and judgment for the plaintiff and the company is here assigning eight errors, and asking for final judgment in its favor.

The case presents the usual features.   The plaintiff alleges the negligence of the defendant in operating its train too rapidly and in failing to give signals as it approached the crossing.   This the defendant denies and pleads that the plaintiff's own negligence in failing to stop was the direct cause of his injury; and the plaintiff replies invoking the discovered peril, or last clear chance, doctrine.   There are also the customary conflicts in testimony as to some of the circumstances.

[1] Taking up first the allegation of the negligence of the company: While there is positive testimony to the effect. that the defendant was free from negligence, there is also evidence to the contrary, and without amplifying this opinion with the testimony, it is sufficient to say that the verdict of the jury must be regarded as having settled this question in favor of the plaintiff.

[2, 3] Secondly then, we must consider the evidence as to the alleged contributory negligence of the plaintiff: He was approaching a crossing with which he was perfectly familiar, on a clear day, at about 10 o'clock a. m., driving an automobile accompanied by his six year old son.   He says that he stopped his automobile seven or eight feet from the north rail of the track; that he knew the crossing "to be a very bad crossing," and that he "took all precautions in crossing," because he "crossed it daily and knew all about it"—that he pulled

up his emergency brake and stopped the machine.   He also says that he looked down the track towards Wedderburn station, from which the train was approaching, but as his view was obstructed by a bank of earth with bushes growing on it, and with fresh earth thrown thereon, he could not see, and that he released the brake and started down an incline and on across the track.   He claims that there was an abrupt chuck in the highway at the crossing, and "quite a gully, as you might say," and this is why he started slowly.   He also testifies that from the point at which he stopped, he being in the driver's seat, fourteen or fifteen feet from the track, he could see the track itself in the direction from which the car approached about thirty or forty feet, and that he could also see the overhead line upon which the trolley moved for about 100 feet.   He then proceeded to cross the track without again looking.   It is manifest that had he looked again before reaching the track his vision of it would have been greatly extended.   He thus describes the occurrence: "When I started across, just as the front wheels of the Ford had rolled over the north track, I looked up the track and I saw the train coming, apparently at a high rate of speed, and then I put on all the gas that was possible for the car to operate under to get off and I could see no slacken in the car, and hoping upon hope that they might see us in time or at least apply the brakes so it would give us a chance to get off, and I thought that I was nearly off the track, when just at that time the train struck right over the rear wheels and threw the front end of the Ford back into the train, and *drug* us down the track and turned us over and over several times, and by some means we were released from this train."

It appears that on approaching the track at several

places a car coming from the direction in which this car came could be seen 960 feet, and that there is nothing to obstruct this view except the bank of earth referred to. The plaintiff repeatedly showed that after he started his automobile to traverse the seven feet between the front of his machine and the track, he did not look again until after the wheels of his machine had crossed one of the rails of the single track. One of his own witnesses, Hardy, who was at work plowing on a hill in a field near by, who, being sixty yards from the crossing, had a good view of the scene, testified that he saw the machine when it had stopped about seven feet from the track, and that at that time the car was "right on him," and again that "the electric car was very nearly on him—very close to him." Upon being pressed to give an estimate of the distance between the electric car and the crossing at that time the witness says that it was about as far away as the door of the court room in which he was at the time, and that this distance was about forty feet or forty-five feet. Taking his own testimony, along with the testimony of this witness so introduced by him, and the physical facts that in the few seconds which it took him to drive his car from a point seven feet from the first rail to the track, and that he was struck by the electric car just before he had cleared the track, it is evident that he was recklessly negligent in attempting to cross the track when the car was so near. He, himself, locates this approaching car of the company as being about 220 feet away when he first saw it. The collision itself which followed in the few seconds thereafter appears clearly to indicate that he over-estimated this distance, and convincingly confirms the testimony of his own witness that the approaching car was very much nearer to the crossing than he estimated it to be.

These being the facts, it is clear to us that the plaintiff was guilty of negligence which, if not the direct cause of his injury, contributed to it.

[4-6] Upon this phase of the case, *Washington & Old Dominion Railway* v. *Zell's Adm'r*, 118 Va. 759, 88 S. E. 309, is conclusive. Many pertinent authorities are there cited and summarized, and this is said: "The negligence of the driver of the car is perfectly manifest. He had no right to proceed across the track without looking and listening for a train. The greater the danger, the greater was the measure of his duty. If he did not see or hear a train when he first reached the point at which the obstruction began to pass from his westward vision along the track, then it was his duty to continue to look and listen until he reached the track. The very contention made here that he had to be close to the track before he could see any distance to the west emphasizes the importance of caution on his part. If the running of his machine interfered with his hearing or looking, it was his duty to stop and look and listen so as to make looking and listening effective. Travelers approaching a public crossing must bear in mind that, while their rights and those of the railroad company at that point are 'mutual, reciprocal and co-extensive,' in general, the law has always accorded, and in the nature of the case must accord, to a moving train the right of way." The frequency of such accidents makes it clear that the rule thus clearly stated must, in the interest of human life and limb, be firmly adhered to and emphasized.

The plaintiff, apparently realizing that he might himself be held negligent, relied upon the last clear chance doctrine, and the jury were instructed accordingly. If a recovery can be sustained in this case, it can only be upon the contention that, after his peril was discovered,

the servants of the company, who were operating the car, had a last clear chance to avoid the collision.

The principles which are applicable in such cases have been recently stated in the cases of *Gordon's Adm'r* v. *Director General*, 128 Va. 426, 104 S. E. 796; *Canody* v. *N. & W. Ry. Co.* 129 Va. 56, 105 S. E. 585.

The rule has been repeated in *Hendry* v. *Virginia Ry. & P. Co.*, 130 Va. 283, 107 S. E. 716, thus: "In order to apply that doctrine, the burden is upon the plaintiff, who is confessedly negligent, to prove by a preponderance of the testimony that after his peril became imminent there was a clear opportunity afforded the defendant to save him from the consequences of his own negligence, and this fact must be proved like any other fact upon which the plaintiff relies." *Real Estate, etc., Co.* v. *Gwyn's Adm'x*, 113 Va. 337, 74 S. E. 208; *Norfolk Southern R. Co.* v. *Smith*, 122 Va. 302, 94 S. E. 789; *Gunter* v. *Southern Ry. Co.*, 126 Va. 565, 101 S. E. 885; *Virginia Ry. & P. Co.* v. *Boltz*, 122 Va. 649, 95 S. E. 467; *Virginia Ry. & P. Co.* v. *Harris*, 122 Va. 657, 95 S. E. 403.

It should and must be emphasized that a plaintiff is not entitled to recover under this doctrine upon a mere peradventure. He has no right to hold the defendant liable merely upon showing that perhaps, if the defendant's agents had responded properly, promptly, instantaneously, he might have been saved. The burden is upon him to show affirmatively by a preponderance of the evidence which convinces the average mind that by the use of ordinary care, after his peril was discovered, there was in fact a clear chance to save him. It is insufficient to show that there was a mere possibility of so doing. Discarding all of the evidence of the company here, and considering only the evidence introduced by the plaintiff himself, it appears that the

available time for stopping the approaching car was so short that possibly a second more would have enabled the plaintiff to clear the track. The fact that before he could drive his automobile the distance of seven feet from the nearest rail across the single track for a sufficient distance to reach a place of safety, his machine was struck, and that he was unable to accomplish it in this short distance, shows that the approaching car, even if traveling at the greatest rate of speed estimated by any witness, thirty-six miles an hour, must have been very close to the crossing before he reached it. When the evidence of his other witness, Hardy, is considered, it is clearly shown that he attempted to cross the track at a time when if he had looked a second time he would have seen that the approaching car was almost upon him, so close indeed that another witness describes the occurrence as coming about as quick as thought. The fact that the plaintiff, as both he and his own witness say, stopped his automobile within seven feet of the crossing was an indication to the motorman who was driving the approaching car that he would not again move until after the car had passed. Indeed, his witness says that when the automobile thus stopped the car had passed him (the witness), who was over sixty yards away. If, on the contrary, he approached the crossing cautiously or slowly, without stopping, and could, as the company claims, have easily seen the approaching car, then the motorman was justified in believing that he would stop and remain in a place of safety. The statute which requires drivers of vehicles to stop at railroad crossings on public highways in the country is certainly to be commended as tending to promote safety.

There was no stopping or stalling of the plaintiff's automobile on the track, no time when his danger was

disclosed, except immediately before or simultaneously with his attempt to cross the track.

Our conclusion then is, from the plaintiff's evidence, that he failed to show that his peril was, or by reasonable care could have been, discovered in time to afford the company's servant, the motorman, a last chance, or any chance whatever, to save him, and that the verdict is without evidence to support it. Taking all of the evidence introduced by the plaintiff as true, and discarding all of the evidence for the defendant, the injury was due to the concurring negligence of both.

[7] The record is voluminous. The plaintiff offered nine instructions, the defendant offered sixteen. Some of these were modified. It seems to us perfectly apparent that in a case in which the controlling facts are as simple as those we have here, so many instructions could only have confused and misled the jury. It would require the closest study by one with a trained mind properly to digest and appreciate the distinctions between the several hypothetical propositions which they in varying form present. No average jury could have fully understood them. When simple issues are made to appear complex by mystifying instructions, harsh criticism of juries for improper verdicts is misdirected. In this case there were only three relevant but distinct propositions, which we have hereinbefore outlined. One instruction clearly drawn, embodying all three, would have assisted the jury; certainly three instructions separately covering these distinct propositions, would have been sufficient. That in this mass of instructions it would be easy to find some error few will doubt, and that some which may be erroneous were either harmless or were cured by others is also doubtless true. No good purpose, however, would be served by pursuing this subject. Our conclusion is that the case

has been fully developed, that the plaintiff has failed to show his right to recover, and therefore we will enter judgment here for the defendant.

*Reversed.*

Sims, J., dissenting:

I find myself unable to concur in the majority opinion.

The jury was not obliged to take as correct the estimate of the plaintiff's witness, Hardy, of the distance the railway car was away when the plaintiff stopped his machine to look and listen before going on the crossing. Indeed, it appears from the defendant's own witness, the motorman, that Hardy was in error in making such estimate.

The reference in the opinion to the inferences the motorman may have drawn from the stopping of the automobile so close to the track, or from the manner in which the plaintiff may have approached the crossing, are inapplicable to the case, as the motorman testified that he did not see the automobile until after it was on the crossing.

I think there was ample evidence to support the verdict of the jury, both upon the finding that the plaintiff exercised reasonable care under all of the circumstances, and that, even if the plaintiff was negligent, the motorman had ample time to have put on the brakes and avoided the accident after the peril of the plaintiff became apparent, if the motorman had discharged the duty of lookout imposed on him by law, so that his negligent failure to discharge that duty was in truth the proximate cause of the accident.