# Richmond.

## SOUTHERN RAILWAY COMPANY AND CHESAPEAKE AND OHIO RAILWAY COMPANY v. ISAAC H. DAVIS, ADMINISTRATOR OF JULIUS A. DAVIS, DECEASED.

March 21, 1929.

The opinion states the case.

*Barbour, Keith, McCandlish & Garnett,* for the plaintiffs in error.

*Walter Tansill Oliver* and *Wilson M. Farr,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

On the afternoon of May 7, 1921, Julius A. Davis, while driving a Ford truck, was killed on the grade crossing of the Southern Railway Company, at Clifton station, by a passenger train of the Chesapeake and Ohio Railway Company. His administrator sued both companies, and the trial resulted in a verdict and judgment for the plaintiff for $3,000.00, of which the defendants are here complaining.

As the location of the crossing is in the incorporated town of Clifton, it is conceded that Code, sections 3958, requiring specific signals from railway locomotives on approaching highway crossings, and 3959, providing that the contributory negligence on one injured at such a crossing shall not bar a recovery but only be considered in mitigation of damages, do not apply in this case. If the plaintiff's intestate, the driver of the truck, was guilty of negligence which proximately contributed to his death, there can be no recovery, unless the last clear chance doctrine applies.

There is much in the briefs filed for the administrator, as to conflicts in the testimony, and their determination by the jury. As a matter of fact, however, the record discloses very few substantial conflicts. There were a number of eye-witnesses of the tragedy, some of whom heard signals which others did not hear, while some observed facts which others did not perceive. Such differences are natural and grow out of the fact that some people are more alert and see more than others, some have better memories, and some attribute more importance to certain circumstances than others who may have observed but forgotten the same facts.

This is a fair summary of the undoubted facts which determine the case: The decedent lived on his

father's farm about two miles away from the station which he frequented, and he was familiar with the crossing at Clifton at which he met his death. On the morning of the day of the occurrence he had driven the truck to Clifton about ten o'clock in the morning, and parked it in proximity to the railway station, about midway between the station and the highway, where it remained until he attempted to drive it across the railway track. As he approached the highway, before turning towards the crossing, at least six witnesses in the immediate vicinity testified that they were aware of the fact that the Chesapeake and Ohio train was then rapidly approaching. There were no curtains on the cab of the truck to obstruct the view, and the day was clear. No witness testified that the driver, the deceased, ever looked in the direction of the Chesapeake and Ohio train, then rapidly approaching on the south-bound track, but there is testimony that he appeared to be looking in the opposite direction from which a freight train, was also approaching but upon the north-bound track. The centre of the road crossing was eighty-two feet from the passenger station, and the corner of the station building was thirty-two and two-tents feet from the nearest rail of the south-bound track. At the place where his car had been parked, the passenger station obstructed the view of the south-bound track, but as he drove his truck towards the highway, the view cleared. At a point on the highway forty-eight feet from the nearest rail of the south-bound track on which the Chesapeake and Ohio train was approaching, and thirty-four feet from the nearest rail of the north-bound track, if one had been there and looked, he could have seen that train coming from the north on the south-bound track when it was 268 feet

distant. When ten feet closer, the unobstructed view from the highway was 567 feet, and when ten feet nearer—that is, when fourteen feet from the nearest rail of the north-bound track and twenty-eight feet from the nearest rail of the south-bound track, on which he was killed, the unobstructed view of that track was 1,705 feet. There is some evidence to the effect that there was cord-wood piled up back of the station. Box cars were on another track, but it is · manifest that these only obstructed the view from the highway as it approached the crossing, but before the view from the highway became obstructed by the station building. As one neared the track, however, and passed the obstruction to the view which the station created, there was then nothing else to obstruct the view of the south-bound track. The evidence of one witness, that a traveler on the highway had to be right on the track before he could see an approaching train, is manifestly inaccurate, because the parallel north-bound track, which was next to the station and upon which trains were constantly passing, was unobstructed. Not only were both the north and south-bound tracks unobstructed, but there was in addition a space between the north-bound track and the station building sufficient to permit rapidly moving trains to pass in safety thereon, in which space the view was also unobstructed. Statements of this witness, if he intended to deny these physical facts, otherwise so clearly demonstrated, cannot be credited. There is no evidence that the driver of the truck ever looked in the direction from which the Chesapeake and Ohio train was so rapidly approaching, though some of the witnesses said that all they could say about this was that they did not see him look in that direction. One of his witnesses testified that he was

watching the freight train of the Southern. We must assume that if he had looked he would have stopped his truck, as this could have been easily and promptly done within a few feet, for it had just started and was moving slowly in low gear.

The plaintiff's counsel appears to rely upon the differences between the witnesses who heard the signals given by the approaching train and those who did not hear them, though in equally as good position to hear, as creating a conflict from which the jury were justified in concluding that the defendant company was guilty of negligence. This conclusion, even if justified by the weight of the evidence, did not relieve the deceased of the consequences of his own independent or concurring negligence in failing to look, or in driving upon the track from a place of safety.

In *Boyd* v. *Southern Ry. Co.*, 115 Va. 14, 78 S. E. 549, Ann. Cas. 1914B, 1017, Buchanan, J., states the rule undoubtedly applicable, thus: ''No general rule of law is better settled in this jurisdiction and generally, it is believed, than that while it is the duty of a railroad company to give notice of the approach of its train to a crossing, the reciprocal duty is imposed upon a person about to go on its track to exercise ordinary care and caution, whether it be a highway crossing or a licensed way. The track itself is a proclamation of danger. It is his duty before going upon it to use his eyes and ears. If he fails to look and listen, as his duty requires him, and attempts to cross the track in front of a moving train and is injured by it, his own act, his own negligence, so contributes to his injury that he is not entitled to recover, unless the railroad company after it discovered, or ought to have discovered, his peril, might have avoided the injury by the exercise of ordinary

care. *Johnson* v. *C. & O. Ry. Co.*, 91 Va. 171, 179, 21 S. E. 238; *Washington, etc., R. Co.* v. *Lacey*, 94 Va. 469, 475-6, 26 S. E. 834; *Southern Ry. Co.* v. *Hansbrough*, 107 Va. 733, 741-2, 60 S. E. 58; *Morton's Ex'r* v. *Southern Ry. Co.*, 112 Va. 398, 405-6, 71 S. E. 561."

It cannot be denied that the failure of a traveler upon a highway to look (and listen) before going upon a railroad track, when there is no obstructed view, and that, having such unobstructed view, the going upon a railroad track from a safe place immediately in front of a moving train which is then so close as to make a collision inevitable, is negligence *per se*. *N. & W. Ry. Co.* v. *Sink*, 118 Va. 439, 87 S. E. 740; *Washington & Old Dom. Ry. Co.* v. *Zell's Adm'r*, 118 Va. 755, 88 S. E. 309; *Norfolk Southern R. Co.* v. *Smith*, 122 Va. 302, 94 S. E. 789; *Canody* v. *Norfolk & Western Ry. Co.*, 129 Va. 56, 105 S. E. 585; *Washington & Old Dom. Ry. Co.* v. *Thompson*, 136 Va. 597, 118 S. E. 76; *Etheridge* v. *Norfolk Southern R. Co.*, 143 Va. 789, 129 S. E. 680.

Another circumstance which is relied upon as supporting the verdict is the fact that there was a crossing gong erected and maintained by the Southern Railway Company for the purpose of sounding an alarm as trains approached the crossing, which some of the witnesses testified was not ringing at the time of the collision. Other witnesses testified that it was then ringing, and it is shown that it was in good repair and operation immediately before as well as immediately after the occurrence. The claim seems to be made that this silent gong was such an invitation to the plaintiff to cross as to relieve him of the duty of looking and listening.

We do not feel disposed in this case to add anything to what has been written upon this subject. It is suf-

ficient to say that the fact that such a gong is silent has never been held to relieve a traveler upon the highway from the duty of looking and listening for approaching trains, when from a safe position such looking and listening would suffice to warn him of his danger, and enable him to avoid injury.

*Payne* v. *Brown*, 133 Va. 222, 112 S. E. 833, which is relied upon for the plaintiff, can be easily distinguished from this case. In that case the view of the approaching train was entirely cut off by long lines of coal cars. These lines of cars were separated only by the width of the crossing—that is, they extended up to the crossing on each side of the highway. The driver had only the short distance between the two closely parallel tracks in which to see the approaching engine and stop his truck. It is said in the opinion that, "The driver of the truck was moving so slowly that, within the few feet available to him after seeing the engine, he was able to stop the truck before its front wheels quite reached the north rail of the pass track, and he attempted to back away, but his reverse gear did not work promptly and he failed in this attempt."

That case, in its essential facts, is quite like *Seaboard Air Line Railway Co.* v. *Abernathy*, 121 Va. 173, 92 S. E. 913, where the vision was so limited by railway cars on both sides of the highway on a track parallel to the track upon which the injury occurred. In that case this is said: "In this case counsel for the company appear to base their charge of contributory negligence imputable to Abernathy on his failure to stop upon the house track between the stationary cars in the opening made in the train for the purpose of permitting travelers to cross that track, for this was the only place at which he could possibly have stopped and had

any view of the detached cars approaching on the connection track. Doubtless, if he had stopped upon that house track for the purpose of making such an investigation and been injured because these cars were brought together suddenly, a demurrer to the evidence would have been sustained upon the ground that there can hardly be a more dangerous place for an automoblie to stop than on a railroad track between cars recently uncoupled for the purpose of opening the highway." In that case there was only eight feet, six inches, between the inside rails of the two tracks, and by the time the driver of the automobile had cleared the overhang of the cars upon the house track, the front of his machine must have been upon the connection track, or so close thereto as to expose him immediately to extreme danger.

It is in cases like these, where there are obstructions to the view and the traveler is exposed to sudden peril, without fault on his part, and must make a quick decision, that the question of his contributory negligence should be submitted to the jury. The rule is positive, clear and easy to state, but the facts of particular cases frequently make its application difficult. This difficulty, which is illustrated by *Davis* v. *McCall*, 133 Va. 487, 113 S. E. 835, and *Chapman's Adm'r* v. *Hines*, 134 Va. 274, 115 S. E. 373, does not exist in this case.

We think it also apparent from the facts already stated that the last clear chance or discovered peril doctrine has no application here. While the truck was at rest, it was concealed from the approaching train by the station building. All of the witnesses describe the happening as "sudden." Several witnesses testify that as the driver started and moved the automobile

towards the highway, they thought he was going to turn to the left, but as he neared or reached the highway he turned to the right and undertook to cross immediately in front of the train which killed him. Of this fact there is no contradiction. Certainly the automobile could not and did not move in a perfectly straight course, because it had first to reach the highway which crossed the tracks approximately at a right angle, and of necessity the course of the automobile, when it neared or reached the highway, was changed and turned to the right across the railway track, for otherwise it could not have met the train as it did on the crossing.

We find no scintilla of evidence in the case to indicate that the servants of the company in charge of the train had any notice whatever of the purpose of the driver of the automobile to cross the track until the collision was so imminent that it was too late to save him. The engineman, on the right-hand side of the engine, testified that he was looking ahead and did not see the truck approach the track because his view was cut off by the front of the engine. The fireman, on the left-hand side of the engine, testified that he saw it a few seconds before the casualty, that he gave immediate warning to the engineman of the danger, and both testified that everything was done that could have been done to stop the train. There is nothing in the testimony offered for the plaintiff which contradicts this testimony, while the physical facts corroborate it.

The trial court should have sustained the motion of the defendants to set aside the verdict of the jury and enter judgment in favor of the defendants because the verdict was against the evidence. Therefore, the judgment will be reversed, and final judgment entered here for the defendants.

*Reversed.*