## Staunton.

NORFOLK AND WESTERN RAILWAY COMPANY v. SUSAN EMMA WELLONS' ADMINISTRATOR.

September 12, 1930.

Absent, Campbell and Epes, JJ.

*R. M. Hughes, Jr.* and *W. Moncure Gravatt,* for the plaintiff in error.

*James G. Martin* and *Tom E. Gilman,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

The Norfolk and Western, a double track railway, runs east and west through Norfolk county. Crossing it at right angles is the George Washington highway, a paved and much traveled road. Where they intersect, the country is level. The railway and the highway are both straight and, with the exception of some telegraph poles, the view from one road to the other was absolutely unobstructed. Shortly after 11 o'clock on the morning of April 24, 1928, Mrs. Susan Emma Wellons and her son-in-law, W. W. Forehand, in a Chevrolet truck headed south, undertook to cross the railway and were struck by a fast westbound passenger train, known as train No. 3, and instantly killed. Both Mrs. Wellons and Mr. Forehand lived near this crossing, and were perfectly familiar with it.

Another fast passenger train, known as the "Cannonball," passed over this crossing going east towards Norfolk and met train No. 3 between 1,300 and 1,400 feet east of the crossing. Both of these trains ran on regular schedule, so regular that one of the plaintiff's witnesses said you could set your watch by them.

Several years preceding the accident, the State Corporation Commission ordered the railway to put gates at this crossing. It did so and they were regularly operated. About six weeks before the accident the railway, without permission from the Corporation Commission, put there a "wig-wag" signal and an electric gong, which it proposed to substitute for the gate and watchman. After installation they were operated in conjunction with the gates for about six weeks, but on the Saturday preceding the accident, which was on a Tuesday, the defendant company ceased to operate the gates at all, and they stood open from that time. No public notice was given of the change.

The day of the accident was sunny; there was considerable wind blowing from the southwest and smoke from the "Cannonball" which first passed, but not enough to

obscure the train. J. G. Swain, a witness for the plaintiff, who saw the accident, said that the wig-wag signal was working. F. L. Willey, another witness for the plaintiff, said that this signal was working regularly, while Mrs. Shackleford said that on the preceding day she noticed that the gong did not ring until after several cars had passed the crossing. Another truck, carrying newspapers, traveling north, crossed the track just after the "Cannon-ball" and just ahead of train No. 3. The situation was then so dangerous that Swain having in mind the Ledger Dispatch truck, said to himself: "He is crazy to cross that track in front of that train," and it was after this that plaintiff's decedent undertook to cross.

Without discussing the evidence, we will content our-selves with saying that train No. 3 gave the statutory signals of approach. We will likewise deal with this case upon the theory that Mrs. Wellons was the guest of her son-in-law, Mr. Forehand, at the time of the accident and sat by him in the truck cab. At the time of the accident the gate arms were standing up and could be plainly seen.

■■ No elaborate statement and no argument is neces-sary to show that Forehand was negligent. Neither gongs nor gates relieve a traveler from the exercise of ordinary care and caution. *Kimball and Fink* v. *Friend,* 95 Va. 125, 27 S. E. 901. To drive in front of an oncoming train on level land and in plain view in the face of bell and whistle is unquestioned negligence and would prevent a recovery though it be manifest that the railway was like-wise clearly negligent.

"It cannot be denied that the failure of a traveler upon a highway to look (and listen) before going upon a railroad track, when there is no obstructed view, and that, having such unobstructed view, the going upon a railroad track from a safe place immediately in front of a moving train which is then so close as to make a collision inevitable,

is negligence *per se. N. & W. Ry. Co.* v. *Sink,* 118 Va. 439, 87 S. E. 740; *Washington and Old Dominion Ry. Co.* v. *Zell's Admr.,* 118 Va. 755, 88 S. E. 390; *Norfolk Southern R. Co.* v. *Smith,* 122 Va. 302, 94 S. E. 789; *Canody* v. *Norfolk and Western Ry. Co.,* 129 Va. 56, 105 S. E. 585; *Washington and Old Dom. Ry. Co.* v. *Thompson,* 136 Va. 597, 118 S. E. 76; *Etheridge* v. *Norfolk Southern R. Co.,* 143 Va. 789, 129 S. E. 680." *Southern Ry. Co.* v. *Davis,* 152 Va. 548, 147 S. E. 228, 229.

■ While there had been no notice of the substitution of one set of signals for another, yet both of these unfortunate people must have been fully aware of it for they lived near the crossing and used it almost every day. The new signals had been in use for more than a month though the use of the gates had continued up to the preceding Saturday.

It is true that there were two trains passing the point of the accident about this time, but the first had passed and gone nearly a quarter of a mile before it met No. 3, and the train that did the damage did not come from behind another which had just passed, but was on the track that lay next to the approaching truck. Sight of it was never at any time cut off or interfered with.

■ Forehand saw the approaching train, or should have seen it in the exercise of any sort of care, and so he was guilty of contributory negligence. The fact that the gates were up did not contribute to the disaster. The gates down would have been nothing but a signal to him to stop. The approach of this express train, itself, was a still more imperative warning to him to do so, and so in such circumstances there was no causal connection between the negligence of the railroad and the accident to the chauffeur. The fact that the gates were up did not "justify" him in going on. *Southern Ry. Co.* v. *Jones,* 118 Va. 685, 688, 88 S. E. 178.

■ The negligence of Mr. Forehand is not to be imputed to Mrs. Wellons. *Southern Ry. Co.* v. *Jones' Admr., supra; Atlantic & D. R. Co.* v. *Ironmonger,* 95 Va. 629, 29 S. E. 319; *Virginia Ry. & Power Co.* v. *Gorsuch,* 120 Va. 655, 91 S. E. 632, Ann. Cas. 1918B, 838; *Hancock* v. *N. & W. Ry. Co.,* 149 Va. 829, 141 S. E. 849. Negligence to be charged against her must be her own.

■ In order for the plaintiff to recover it is necessary for him to prove, first, that the defendant was negligent, and, second, that this negligence contributed to the hurt. There must have been some causal connection between the negligence of the defendant and the injuries suffered by the plaintiff. *Norfolk Southern R. Co.* v. *Banks,* 141 Va. 715, 126 S. E. 662; *Etheridge* v. *Norfolk Southern R. Co.,* 143 Va. 789, 129 S. E. 680; *White* v. *Southern Ry. Co.,* 151 Va. 302, 144 S. E. 424; *Southern Ry. Co.* v. *Johnson,* 151 Va. 345, 146 S. E. 363. A plaintiff can only recover compensation for such damages as negligence occasioned.

■ In the case in judgment the railway was negligent. It ceased to maintain, without the consent of the Corporation Commission, gates established by its order, and permitted them to stand open, which in itself was an invitation to the traveling public.

■ Was Mrs. Wellons herself negligent? She sat on the front seat with the driver and it was her duty to take ordinary precautions for her own protection. What precautions are ordinarily to be expected vary with the situation. If she knew of the crossing and its constant use, more was to be required of her than of a stranger to the locality. Opportunities for observation are to be remembered. One on the front seat of a roadster can appreciate an oncoming peril more readily than if seated on the back seat of a limousine.

■ The guest should not undertake to drive and may trust the driver until it becomes plain that such trust is misplaced.

■ "Collisions with Railroad Trains—Duty of Occupant—It is the duty of one who is riding in an automobile as a passenger, when about to cross a railroad track, to look and listen for approaching trains, and to warn the chauffeur of the near approach of a train, and prevent him from attempting to cross the tracks close in front of the train, and a failure to perform his duty amounts to negligence.

"He must use reasonable care to learn of the approach of a train and to keep out of its way." Berry on Automobiles (4th ed.), section 590.

"Even where the negligence of the driver of a private vehicle cannot be so imputed, an occupant thereof is not excused from exercising any care, and if he does not exercise such care as a reasonably prudent man would exercise under the circumstances, he cannot recover for injuries thereby occasioned." 2 R. C. L., page 1208.

"The district court was correct in charging the jury that the negligence of the driver of an automobile is not as a matter of law imputed to one riding with him as a passenger or guest, but nevertheless that one riding as a passenger or guest may not place his safety entirely in the keeping of the driver, but that he must exercise due and reasonable care for his own protection and safety. *Hines* v. *Johnson* (C. C. A.) 264 Fed. 465, 469; *Ilardi* v. *Central California Traction Co.*, 36 Cal. App. 488, 172 Pac. 763; *Campbell* v. *Walker*, 2 Boyce (Del.) 41, 78 A. 601; *United Rys. & Elec. Co. of Balt.* v. *Crain*, 123 Md. 332, 91 A 405; *Johnson* v. *Underwood*, 102 Or. 680, 203 P. 879; *Glick* v. *Baer*, 186 Wis. 268, 201 N. W. 752; *Carter* v. *Brown*, 136 Ark. 23, 206 S. W. 71; *Parmenter* v. *McDougall*, 172 Cal. 306; 156 P. 460; *Pope* v. *Halpern*, 193 Cal. 168, 223 P. 470; *Wagner* v. *Kloster*, 188 Iowa 174, 175 N. W. 840; *Sharp* v. *Sproat*, 111 Kan. 735, 208 P. 613, 26 A. L. R. 1421; *Naglo* v. *Jones*, 115 Kan. 140, 222 P. 116; *Hermann* v. *Rhode Island Co.*, 36 R. I. 447, 90 A. 813; *Tennessee Central R. Co.*

v. *Vanhoy*, 143 Tenn. 312, 226 S. W. 225; *Bauer* v. *Tougaw*, 128 Wash. 654, 224 P. 20; *Dansky* v. *Kotimaki*, 125 Me. 72, 130 A. 871; *Poynter* v. *Townsend* (Del. Super.) 130 A. 678; *Wayson* v. *Rainier Taxi Co.*, 136 Wash. 274, 239 P. 559, 45 A. L. R. 290; 20 R. C. L. 159–165; R. C. L. Per. Sup., p. 678, volume 1.

These authorities are in harmony with Virginia decisions.

The case of *Southern Ry. Co.* v. *Jones, Admr.*, 118 Va. 685, 88 S. E. 178, 180, is quite in point. There Kieth, P., said: "By the side of the driver sat the plaintiff's intestate. All that was visible to the one was equally so to the other, and there is no proof nor even a suggestion that he, more than the driver, by word or act, took any precaution for his own safety. Upon this record they were both equally guilty of negligence which caused the accident."

"The negligence of the driver is not to be imputed to a passenger, but it is the duty of the traveler to use ordinary care for his own safety. The railroad track is to him, as to others, a signal of danger, and his failure to exercise reasonable precaution for his own protection is contributory negligence and bars a recovery. The evidence in this case shows that if the driver or the traveler, either or both, had exercised the most ordinary caution, the accident could never have happened, for, without undertaking to reduce the distance at which the train could have been seen to feet, there is no room to doubt that it could have been seen in time to have prevented a collision. If they had looked they could have seen; if they had listened they could have heard; for it appears by the evidence of a witness—introduced it is true by the defendant, but as to whose statement there is no contradiction—that seeing the train approach from under the bridge, and they seemed not to have seen it, the witness 'hollered' to the driver, who paid no heed to the warning." See, also, *Atlantic & D. R. Co.* v. *Ironmonger*, 95 Va. 625, 29 S. E. 319; *Virginia*

& S. W. R. Co. v. *Skinner*, 119 Va. 843, 89 S. E. 887; *Shiflett's Admx.* v. *V. R. & P. Co.*, 136 Va. 72, 116 S. E. 500; *Hancock* v. *N. & W. Ry. Co.*, 149 Va. 829, 141 S. E. 849; *Norfolk & P. Belt Line R. R. Co.* v. *Parker*, 152 Va. 484, 147 S. E. 461.

This statement from *Parker* v. *Seaboard Air Line Ry.*, 181 N. C. 95, 106 S. E. 755, 759, is quoted with approval: "All that could be required of the plaintiff" (who was a passenger in an automobile and had no control over it) "was to look and listen and to warn the driver of approaching danger."

Always it is to be remembered that we are not dealing with sudden peril. So far as the facts are written into the evidence, both the driver and Mrs. Wellons, in total disregard of patent peril, moved with deliberation to their appointed doom.

There are many cases like *Kimball and Fink* v. *Friend*, 95 Va. 125, 27 S. E. 901, in which a recovery was sustained when there was evidence tending to show that the view was in some way obscured. There are others like *Va. Ry. & P. Co.* v. *Gorsuch, supra*, where in the turmoil and confusion of urban traffic the passenger was not required to protest, but we know of none which hold that she can sit in silence and see the driver, in an open country and on a clear day, run into an approaching express train whose whistle was blowing and bell ringing. If she did not protest, she was guilty of contributory negligence and there can be no recovery.

 Did Mrs. Wellons, in fact, protest? She and the driver are both dead and so there can be no positive testimony as to this. The instincts of self-preservation are strong within us, and in the absence of evidence we should assume that she did, but the assumption is overborne by the fact that eyewitnesses testified to no act of the driver tending to show that he was given any such caution. He

might have checked his car, and he might, if notice of danger came late, have turned to the right, into a county road which ran west with the railway right of way. He did neither. If she did warn the driver, then he had positive knowledge of the situation and his failure to stop or to attempt to stop was due to no negligence of the railroad. Its negligence consisted in having the gate open, but an open gate was no invitation to the driver to attempt to beat the train to the crossing. His negligence was the sole present proximate cause of the accident and superseded the remote negligence of the railway. *Appalachian Power Co.* v. *Wilson*, 142 Va. 468, 129 S. E. 277. Here again was no causal connection. The fact that the gates were up in no wise contributed to the accident.

It is said that all of these matters are for the jury and that our court has frequently so held. All of this is true, but in all cases of this character there was something for the jury to decide, some issue made by the evidence. It is our duty to support a verdict when possible, while it, in turn, must be supported by the evidence. Any other rule would make of it a fetish and put away that responsibility which must always rest upon the court. Code 1919, sections 6251, 6363; *Flannagan* v. *Mutual Ins. Co.*, 152 Va. 38, 146 S. E. 353.

Forehand followed the bad example of the Ledger Dispatch truck driver, and seemed bent upon racing the train to the crossing. On this purpose and not on the open gate, responsibility rests.

For reasons stated we are of opinion that the judgment of the court below should be reversed, and it is so ordered.

*Reversed.*