## No. 15,095.

### CAMPBELL ET AL. *v.* TRATE.
(149 P. [2d] 380)

Decided April 17, 1944.   Rehearing denied May 8, 1944.

Messrs. McHendrie, Burris & Pointer, for plaintiffs in error.

Messrs. Langdon & Barbrick, for defendant in error.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

This is an automobile accident case in which John M. Trate, defendant in error, recovered judgment in the sum of five thousand dollars for the death of his wife, to whom we hereinafter refer as Mrs. Trate, who was riding as a guest in the car of one Keating which collided with a car owned by plaintiff in error Elmer Campbell, but driven at the time of the accident by his minor son Herbert, the other plaintiff in error. The Campbells seek reversal of the judgment on a writ of error.

Reference will be made to the parties as they appeared below, or by name.

The accident occurred about ten o'clock p.m., August 2, 1939, at a point approximately one and one-half miles west of Greenhorn, Colorado, on a partly surfaced road leading from that place to a mountain resort community known as Rye, Colorado, six or seven miles to the west of Greenhorn, the latter village being located on the main paved highway between Walsenburg and Pueblo.

The pertinent facts are as follows: On the evening in question, and for some time prior thereto, Mrs. Trate, Paul Keating and several other persons had been guests at the mountain cabin of Mrs. Trate's sister, Mrs. Simpson. Shortly before ten o'clock, Mrs. Simpson and her friend, a Miss McKinley, who were employed in Pueblo and who had driven to the cabin to spend the evening, announced their intention of returning to Pueblo. Keating, Mrs. Trate and Mrs. Ogg decided to accompany

them as far as Greenhorn, Keating and Mrs. Trate traveling in a Pontiac coupe, and Mrs. Simpson and the other women following in Mrs. Simpson's car at a distance of about two hundred yards, both cars proceeding in an easterly direction.

At about the same time, Herbert Campbell was driving a Plymouth sedan west from Greenhorn towards Rye. He was accompanied by his cousin Glen Pryor, Leo Doud and Mary Vucetich. While thus proceeding, the Campbell car struck the Keating car on the right, broadside. As a result of the crash, Mrs. Trate was instantly killed, and Pryor received injuries from which he died the following morning. Keating, Campbell and Miss Vucetich were injured.

A short distance west of the place of the accident are two small hills, or humps in the road, and the Pontiac coupe was just going over the easterly of these two humps as the Simpson car cleared the other one. As Mrs. Simpson, driving her car, reached the top of the eastern hump, she saw there had been an accident. After a hasty investigation, she immediately proceeded to Greenhorn for assistance. Upon being informed of the accident by Mrs. Simpson, Howard Lukenbill of the Colorado courtesy patrol, and others, went to the scene, where, after administering first aid to the victims, the patrolman sent to Greenhorn for an ambulance. He investigated the cause of the accident in the meantime, taking various measurements of the movement of the cars as disclosed by the tire tracks made immediately prior to the crash and of those leading to the points where the cars involved came to rest.

There is no serious dispute concerning certain primary facts. As Keating, driving at a rate of about forty miles an hour, descended the slope of the easterly hump, he saw the Campbell car approaching from the opposite direction. The Campbell car was then in the middle of the highway, and Keating, becoming apprehensive, drove his car over to the right, the right wheels of the car

going into the borrow pit. The driver of the Campbell car continued his course, but now on the south side of the road, i.e., in Keating's lane of travel. Keating, fearing a collision, turned his steering wheel to the left, bringing the car back upon the road and heading it diagonally across the same. At the same time Campbell, attempting to get back to his lane of travel, drove his car diagonally across the road and struck the right side of Keating's car, as noted above.

The crucial factual question in the case is, At what point on the highway did the actual impact occur? Counsel for defendants state the matter as follows: "It was the theory of the plaintiff that the accident occurred on the south side of the highway in Keating's lane of travel, and it was the defendants' theory that the accident occurred on the north side of the highway in Campbell's lane of travel."

The charge of negligence in the complaint was, that Herbert Campbell "was operating and driving a certain Plymouth sedan in a westerly direction upon said Colorado State Highway No. 181, at a high rate of speed, and on the left side of said highway, and so carelessly, recklessly and negligently and so far out of his proper lane of traffic so as to force the said Pontiac automobile operated by the said Paul H. Keating off of said highway and into the right hand borrow pit; that the reckless, careless and negligent operation of said Plymouth automobile by said defendant Herbert Campbell caused said Plymouth automobile to be entirely across the center line on said highway and upon his left side thereof and in the lane of traffic used by cars proceeding easterly, so that the said Plymouth automobile collided with said Pontiac automobile operated by the said Paul H. Keating, completely demolishing both said automobiles," and that by reason thereof Mrs. Trate lost her life. The answer was a general denial, and it is conceded that even though Keating may have been negligent, his negligence was not imputable to decedent.

While counsel for defendants specify eleven points as grounds for reversal, we believe it necessary to consider only three: 1. The court erred in overruling the motion of defendants for a directed verdict. 2. Erroneous rulings of the court in the admission and exclusion of certain evidence. 3. Refusal of the court to give defendants' requested instructions.

1. Counsel for defendants devote almost one hundred pages of their brief to the proposition of the court's refusal to direct a verdict. Three-fourths of the argument is devoted to an attempt to show by physical facts that the accident could not have occurred as assumed in the theory set forth by plaintiff, and that indisputably it took place on the north side of the highway; that being so, ipso facto, the Campbells were not negligent under the only remaining charge of negligence in the complaint, i.e., that Herbert Campbell was on the wrong side of the road. They ground their contention largely upon a sentence appearing in Keating's written statement to Officer Lukenbill, which is as follows: "I tried to get back on the road and did get my front wheels back but the rear wheels caught in the ditch and that swung my car around and I couldn't do a thing with it." They argue that this is "a tacit admission by him that his car was out of control from the moment it entered the borrow pit, if not before, until he succeeded in getting out, with the natural result that followed, his car being catapulted across the highway into the path of the Campbell car." They further contend that Campbell's car by that time was back on its (north) side of the road.

There is absolutely nothing in this record to indicate that the Keating car was out of control at the time he drove it partially into the borrow pit. The natural thing for Keating to do in the circumstance when he saw the car coming towards him on the wrong side of the road would be to turn into the borrow pit, since, at the mo-

ment, it afforded what appeared to be the only way to avoid a collision.

Evidently the argument of defense counsel is an attempt to impute negligence to Keating. Such would be unavailing in any event, because, as heretofore indicated, and as counsel concede, Keating's negligence would not be imputable to Mrs. Trate, and the judgment must be affirmed if Campbell was negligent, even though his negligence was only concurrent in causing the accident.

We think the fact that Campbell was driving on the left side of the road immediately prior to the accident was sufficiently established to warrant the jury in so finding. From a minute and critical analysis of the plats: plaintiff's exhibit "A" and defendants' exhibit "1", it is a reasonable inference that the impact took place at the point designated, "Y", "which is six feet from the south side of the road." Assuming that defendants' plat was not prepared to indicate specifically their theory of the case, viz., that the point of impact was on the north side of the road, but rather to afford the witnesses a means by which they could formulate a picture in their minds of the accident as the trial progressed, it demonstrates, as does plaintiff's exhibit "A", that the collision did occur at point "Y". The point of impact was established by tracing the wheel marks of both cars, of the one, out of the borrow pit to the point of collision, and of the other, the skid marks on the road from that point to the place where the cars came to rest in their respective positions following the accident. We are not overlooking defendants' contention that the tire marks in the borrow pit were those of the Simpson car (made at the time Mrs. Simpson went to Greenhorn for help) and not those of the Campbell car, but that was a question of fact to be determined by the jury.

Twenty-six exhibits — twelve for plaintiff, and fourteen for defendants — accompany the record, and it was stipulated that they be admitted without further proof.

These include photographs taken of the road, and of the cars after the accident, and from these the jury could properly conclude that the accident occurred according to plaintiff's theory.

Excluding the parties directly involved, the principal witnesses were the courtesy patrol officer, Lukenbill, and the deputy sheriff. They cooperated in making measurements of the car tracks, etc., and initially were in apparent agreement as to what actually occurred at the time of the accident. Later the deputy sheriff changed his mind, reaching the conclusion that the accident took place on the north side of the road, and he attempted unsuccessfully to convince Lukenbill, the patrol officer, that this conclusion was correct. The jury was justified in believing Lukenbill, because he arrived first at the scene of the accident and had the better opportunity to observe the situation. Several other witnesses supported Lukenbill in his deductions.

Defense counsel say that there is conflict only in the theories of the contending parties, and that the actual physical evidence, and the deductions properly to be made therefrom, point solely and exclusively to the ultimate fact that the accident could not have taken place at point "Y". However, as already noted, most of their brief is devoted to pointing out conflicts and inconsistencies in the evidence. We may concede that a conclusion consistent with the defense point of view would find support in the evidence, but that fact does not warrant us in invading the province of the jury and declaring, as a matter of law, that it acted erroneously in not finding according to that view.

As to the alleged variance between pleading and proof, we hold that there was no error. Assuming that the matter of speed need not be considered, the complaint still sufficiently alleges negligence on the part of Campbell in that he was on the wrong side of the road, which was the issue in the case. As to it, the general allegation of negligence was sufficient. *McGonigle v.*

*Kane,* 20 Colo. 292, 38 Pac. 367; *Drake v. Slessor,* 65 Colo. 292, 176 Pac. 301; *Drumright v. Goldberg,* 92 Colo. 271, 19 P. (2d) 764.

2. As to the alleged error on the part of the trial court in permitting Keating to explain the meaning of his statement above quoted concerning his car being allegedly out of control, we say that since the same latitude was allowed defense counsel in permitting Campbell to explain away the effect of the meaning of his statement to the officer: "and I don't know what was the matter with me. I don't think I was asleep * * *," the error, if there was error, was not prejudicial. In this connection we may add, that the alleged error of the trial court in permittiing plaintiff's counsel to question Campbell regarding his visit to an occulist, was offset by the admission of testimony showing that Campbell did have a license permitting him to drive on the evening in question. However, the condition of his eyes might well have had a bearing on his being on the wrong side of the road and the jury had a right to take that matter into consideration. There was no error in the court's ruling refusing permission to defense counsel to interrogate concerning an alleged conversation that Keating had with some of the guests, before leaving Rye, the point sought to be made being, that remarks then made by Keating indicated a state of mind which could have caused him later to drive into the borrow pit. Such remarks were clearly too remote to have had any bearing on the accident.

3. The court did not commit error in refusing to give any of defendants' tendered instructions, and their counsel offer no argument in support of their statement that the court was in error in declining to give them. The instructions given fully and fairly stated the issues and applicable law.

Assuming, without deciding, that both drivers were negligent, our pronouncement in the recent case of *Leonard v. Bauer,* 112 Colo. 247, 149 P. (2d) 376, is

applicable here, namely: "When two drivers thus create a dangerous condition by each following a course along a highway which, under the rules of the road, he has no right to follow, the contention that either has a right to have a passenger, who had no control of either car, assume the hazard of the peril negligently so created does not impress us as being either reasonable, or sound law."

Defense counsel say: "In the instant case, were there evidence of concurring negligence by both Keating and Campbell, there would be no question of the plaintiff's right to recover against either." We think this possibility is covered by instructions numbers 6 and 8, which were not objected to.

On the questions of evidence, we have read *Teche Lines v. Bounds*, 182 Miss. 638, 179 So. 747; *Schafer v. State*, 171 Md. 506, 189 Atl. 273; *White v. Richmond Greyhound Lines*, 158 Va. 462, 163 S.E. 78; *Norfolk & Western Ry. Co. v. Wellons' Adm'r.*, 155 Va. 218, 154 S.E. 575, cited by counsel for defendants. Without particularizing as to distinctions, we are not persuaded that they are authority for disturbing this verdict. We find no reversible error in the record.

Judgment affirmed.

MR. CHIEF JUSTICE YOUNG, and MR. JUSTICE BURKE concur.